UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-81624-CIV-MARRA

RAQUEL ABRAMS-JACKSON,

Plaintiff,

vs.

ROBERT AVOSSA, CHERYL MCKEEVER
in their individual capacities, PALM BEACH
COUNTY SCHOOL DISTRICT (BOARD),

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendants' Motion to Dismiss (DE 11). The Motion is fully briefed and ripe for review. The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I. Background

Plaintiff Raquel Abrams-Jackson brings an eleven-count Complaint against Defendants Robert Avossa[1] ("Avossa"), Cheryl McKeever[2] ("McKeever") and the Palm Beach County School District (Board) ("PBSB") pursuant to 42 U.S.C. §§ 1983 and 1988 against all Defendants (count one); 42 U.S.C. § 1983 against PBSB (count two); 42 U.S.C. § 1983 for a violation of the First Amendment against all Defendants (count three); 42 U.S.C. § 1983 for a violation of equal protection of law against all Defendants (count four); 42 U.S.C. §§ 1985 and

---

[1] Avossa is the superintendent of the Palm Beach County School District. (Compl. ¶ 9.)

[2] McKeever is the former head principal of the Palm Beach Lakes Community High School (Compl. ¶ 10.)

1986 for conspiracy against all Defendants (count five); Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e ("Title VII"), for race discrimination against all Defendants (count six), Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"), against all Defendants (count seven); Title VII retaliation against all Defendants (count eight); 42 U.S.C. § 1983 for a violation of procedural due process against all Defendants (count nine); 42 U.S.C. § 1983 for a violation of substantive due process against all Defendants (count ten) and a count for respondent superior against the PBSB (count eleven).

According to the Complaint, Plaintiff, a Black woman over the age of 40, has been a teacher for the Palm Beach County School District since 1997. (Compl. ¶¶ 8,12.) In October of 2014, Plaintiff was involuntarily moved from her previous position to Palm Beach Lakes Community High School. (Compl. ¶ 14.) Because of her experience, Plaintiff became more active in union activities. (Compl. ¶ 16.) On or about November 2015, McKeever gave Plaintiff a cease and desist letter. (Compl. ¶ 17.) On or about November 17, 2015, Plaintiff went to a school board meeting to address her concerns, but was cut off while addressing the school board and escorted out of the room. (Compl. ¶¶ 18-19.) Subsequently, during a teacher work day meeting, McKeever singled out Plaintiff, and proceeded to mock and ridicule her. (Compl. ¶¶ 22-23, 26-27.)

Defendants move to dismiss the Complaint on the following grounds: (1) the Complaint does not comply with general pleading requirements; (2) the Complaint improperly names the "School District" as a defendant rather than the School Board of Palm Beach County; (3) the claims brought against the individuals in their official capacity are the equivalent of bring claims against the local government entity; (4) count one should be stricken as redundant; (5) the section

2

1983 claims against PBSB should be dismissed as that entity cannot be liable under a theory of respondent superior; (6) the individual capacity claims should be dismissed because there are no allegations that Defendants acted in their individual capacity and they are entitled to qualified immunity; (7) the conspiracy claims should be dismissed because a school board cannot conspire with its own agents or employees; (8) the individual Defendants are not employers under Title VII or the ADEA; (9) the remaining Title VII and ADEA claims should be dismissed for failure to state a claim; (10) there are no due process claims when there are adequate state remedies; (11) punitive damages under Title VII and ADEA are not proper and (12) the Complaint fails to allege irreparable harm to require a preliminary injunction.

   II.  Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### III. Discussion

A.  Naming the "School District" as opposed to the "School Board of Palm Beach County"

Defendants assert that the proper Defendant to be named is the School Board of Palm Beach  County and relies upon Article IX, Section 4 of the Florida Constitution[3] as well as

---

[3]     (a) Each county shall constitute a school district. . . In each school district there shall be a school board composed of five or more members chosen by vote of the electors. . .
(b) The school board shall operate, control and supervise all free public schools within the school district . . .

F.S.A. Const. Art. 9 § 4.

Florida Statutes §§ 1001.32(2),[4] 1001.41[5] and 1001.40.[6]  The Court agrees with Defendants that the school board, as opposed to the school district, is the proper entity to be sued, and Plaintiff does not provide any authority to the contrary.  The Court will allow Plaintiff leave to amend to name the proper Defendant.

B.  Section 1983 Claims

Official Capacity Claims against Defendants Avossa and McKeever

Defendants Avossa and McKeever move to dismiss all official capacity claims against them pursuant to 42 U.S.C. § 1983 on the basis that these claims are the functional equivalent of section 1983 claims against the local government entity for which the individuals work.  This is consistent with Eleventh Circuit precedent.  See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) ("when an officer is sued under § 1983 in his or her official capacity, the suit is

---

[4] In accordance with the provisions of s. 4(b) of Art. IX of the State Constitution, district school boards shall operate, control, and supervise all free public schools in their respective districts and may exercise any power except as expressly prohibited by the State Constitution or general law.

Florida Statute § 1001.32(2).

[5] The district school board, after considering recommendations submitted by the district school superintendent, shall exercise the following general powers
. . .
4) Contract, sue, and be sued. The district school board shall constitute the contracting agent for the district school system.

Florida Statute § 1001.41.

[6] The governing body of each school district shall be a district school board. Each district school board is constituted a body corporate by the name of "The School Board of ____ County, Florida."

Florida Statute § 1001.40.

simply another way of pleading an action against an entity of which an officer is an agent.") (internal quotation marks omitted); see also Penley v. Eslinger, 605 F.3d 843, 854 (11th Cir. 2010) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)).

Based on this precedent, the Court dismisses with prejudice the section 1983 official capacity claims against the individual Defendants.[7]

Count one

Count one incorporates all preceding paragraphs of the Complaint and simply "claims damages under 42 U.S.C. §§ 1983 and 1988." (Compl. ¶¶ 36-37.) By proceeding in this fashion, Plaintiff has incorporated facts that in no way relate to this specific count.[8] See Grief v. Jupiter Med. Ctr., Inc., No. 08-80070-CIV, 2008 WL 2705436, at * 4 (S.D. Fla. July 9, 2008) (in referencing other numbered paragraphs, care should be taken so that only relevant paragraphs of the complaint are referenced). Furthermore, a claim must do more than simply plead damages. For this reason, count one is dismissed with leave to amend.[9]

---

[7] Because the Court is dismissing the official capacity claims against the individual Defendants, the Court need not address Defendants' argument to strike the request for punitive damages with respect to these claims.

[8] Because other counts must be re-pled, the Court instructs Plaintiff to correct this pleading deficiency with respect to the remaining counts as well.

[9] If the sole purpose of this count was to include a request for damages, there is no reason to retain this count in the amended pleading because the prayer for relief includes a request for damages.

Count two

Count two does not identify the substantive right PBSB allegedly violated. Instead, it only refers to 42 U.S.C. § 1983. Section 1983, however, does not create any substantive rights, it merely provides a remedy for deprivations of rights established by the United States Constitution or the laws of the United States. See Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). As such, the Court dismisses this count and will allow Plaintiff leave to amend to assert a viable claim.

Counts three and four

Counts three and four seek to hold the PBSB and the individual Defendants liable for constitutional violations under section 1983. The Court will discuss the claims against the PBSB first.

"The Supreme Court has placed strict limitations on municipal liability under § 1983." Grech v. Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir. 2003) (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989) and Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). A city's liability under Section 1983 "may not be based on the doctrine of respondeat superior." Id. A local government is "liable under Section 1983 only for acts for which the local government is actually responsible." Marsh v. Butler Cnty., 268 F.3d 1014, 1027 (11th Cir. 2001), abrogated on other grounds, Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "Indeed, a [local government entity] is liable only when the . . . 'official policy' causes a constitutional violation." Grech, 335 F.3d at 1329. Thus, Plaintiff must "'identify a municipal 'policy' or 'custom' that causes his injury.'" Id. (quoting Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)).

A § 1983 plaintiff "has two methods by which to establish a policy: identify either (1) an officially promulgated policy or (2) an unofficial custom or practice shown through the repeated

acts of a final policymaker." Id. "Because a [school board ] rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the [school board] has a custom or practice of permitting it and that the [school board]'s custom or practice is 'the moving force [behind] the constitutional violation.'" Id. at 1330 (quoting City of Canton, 489 U.S. at 389).

To establish "§ 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)); see also Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), overruled on other grounds, Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003) ("To establish a policy or custom, it is generally necessary to show a persistent and widespread practice.").

With respect to PBSB's custom, the Complaint merely alleges that the "policies, practices, customs and/or procedures as set forth in this Complaint" and the "failure to train and supervise" employees were the moving force behind the constitutional violations. (Compl. ¶¶ 49-50; see also Compl. ¶¶ 56, 64.) The Court finds these allegations to be too conclusory. The Complaint does not identify the policy or custom at issue. Nor does the Complaint provide any facts in support of the PBSB's alleged failure to train or supervise its employees. There are no facts that give rise to an official policy or custom that caused the alleged constitutional violations. For these reasons, counts three and four against the PBSB are dismissed with leave to amend.

Next, the Court examines these claims against the individual Defendants in their individual capacities. In alleging a First Amendment retaliation claim, Plaintiff must show (1) she engaged in speech or an act that was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech or act; and (3) there is a causal connection between the retaliatory actions and the adverse effect on the constitutionally-protected speech or act. O'Boyle v. Sweetapple, 87 F. Supp. 3d 1365, 1370 (S.D. Fla. 2016) (citing Bennett v. Hendrix, 423 F.3d 1247, 1255–56 (11th Cir. 2005)). Here, Plaintiff has not identified the speech that was constitutionally protected nor the retaliation the individual Defendants took against her. Plaintiff must amend this count to address these deficiencies. [10]

Without knowing yet if a constitutional claim exists, the Court cannot determine at this juncture whether the qualified immunity defense would apply. See Wooten v. Campbell, 49 F.3d 696, 699 (11th Cir. 1995) (the qualified immunity defense only applies if the complaint states a violation of a clearly established constitutional right). Defendants may reassert this defense against the amended pleading, if appropriate.

Counts nine and ten

The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Substantive due process protects fundamental rights "implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 325 (1937).

---

[10] Count four is an Equal Protection claim pursuant to section 1983. Because discrimination claims brought under the Equal Protection clause are subject to the same standards of proof as Title VII claims, the Court adopts its reasoning set forth infra and directs Plaintiff to re-plead this clam. See Bryant v. Jones, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).

The Eleventh Circuit does not recognize substantive due process claims for pretextually terminated public employees. See McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994). Because employment rights are created by state law and thus not "fundamental rights" protected by the Constitution, they are not entitled to substantive due process protection. Id. at 1560. As a result, an employee's property right in employment is protected only by the procedural component of the Fourteenth Amendment Due Process Clause. Id.  Although Plaintiff does not allege that she has been pretextually terminated, this precedent has been applied to other employment decisions such as demotions.  See Wallace v. City of Montgomery, 956 F. Supp. 965, 980 (M.D. Ala. 1996). Given that McKinney stated that only procedural due process claims are available, the Court will dismiss with prejudice the substantive due process claim and now turn to the procedural due process claim.  Id.

A section 1983 procedural due process violation requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. Reams v. Irvin, 561 F.3d 1258, 1267 (11th Cir. 2009).

"Generally, a public employee has a property interest in continued employment if state law or local ordinance in any way 'limits the power of the appointing body to dismiss an employee.' " Ross v. Clayton Cnty., Ga., 173 F.3d 1305, 1307 (11th Cir. 1999) (quoting Barnett v. Housing Auth. of Atlanta, 707 F.2d 1571, 1577 (11th Cir. 1983)).  But no property right in government employment exists if an employee is subject to discharge at will and no showing of good cause is necessary to terminate his employment.  Tie Qian v. Secretary, Dep't of Veterans Affairs, 432 F. App'x. 808, 811 (11th Cir. 2011); see also Blanton v. Griel Memorial Psychiatric Hosp., 758 F.2d 1540, 1543 (11th Cir.1985) ("[A] state employee who may be discharged at will

10

under state law does not have a property interest in his continued employment and is not entitled to the protection of due process."). Thus, to enjoy a protected property interest in employment, a person must have more than a "mere unilateral expectation" of continued employment. Warren v. Crawford, 927 F.2d 559, 562 (11th Cir.1991) (citing Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)).

Process cannot be inadequate when state remedies—to include judicial remedies—are available. See Reams v. Irvin, 561 F.3d 1258, 1267 (11th Cir. 2009); McKinney, 20 F.3d at 1565. Florida law permits judicial appeals, on procedural due process grounds, of school board employment actions. See generally Seiden v. Adams, 150 So. 3d 1215 (Fla. Dist. Ct. App. 2014); Schimenti v. School Bd. of Hernando Cnty., 73 So. 3d 831 (Fla. Dist. Ct. App. 2011). Procedural due process deprivation claims "will not be cognizable under [Section] 1983 if the state provides a means by which to remedy the alleged deprivation." Foxy Lady, Inc. v. City of Atlanta, 347 F.3d 1232, 1238 (11th Cir. 2003). Florida courts provide a means and, if appropriate, a remedy for the School Board's employment decision. See McKinney, 20 F.3d at 1563.

Here, Plaintiff has not alleged a property right in her employment with the PBSB or that she is anything but an at-will employee. Nor has she explained how she is not afforded state remedies. The Court will grant Plaintiff leave to amend to replead this claim, assuming she can do so in good faith.

Punitive Damages under section 1983 against PBSB

Defendants move to strike the request for punitive damages against PBSB under section 1983. Defendants are correct that the United States Supreme Court has held that "a municipality

is immune from punitive damages" under section 1983.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271(1981).  District courts in this Circuit have extended this holding to apply to school boards in the state of Florida.  See, e.g., Mouton v. School Bd. of Collier County, No. 2:11–cv–568–FtM–29DNF, 2012 WL 3639004, at *4 n.4 (M.D. Fla. Aug. 23, 2012); Kubany v. School Bd. of Pinellas County, 839 F. Supp. 1544, 1551 (M.D. Fla. 1993).  As such, the Court strikes the request for punitive damages against PBSB.

     C.  Section 1985 and 1986 claims (count five)

Count five alleges that all three Defendants conspired to deprive Plaintiff of her constitutional rights.  Defendants move to dismiss this claim on the basis of the intracorporate conspiracy doctrine.  The Eleventh Circuit has explained this doctrine as follows:

> [W]e turn next to the question of whether the intracorporate conspiracy doctrine applies and precludes [the] § 1985(3) conspiracy claim in this case. Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation. This doctrine stems from basic agency principles that "attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor." The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself. This doctrine has been applied not only to private corporations but also to public, government entities.

Dickerson v. Alachua County Com'n, 200 F.3d 761, 767 (11th Cir. 2000).

Without deciding the issue, the Eleventh Circuit noted that other circuits have recognized the following exceptions to this doctrine: (1) for "convictions involving criminal charges of conspiracy," (2) where the employee has an "independent personal stake" in his unconstitutional acts and is not acting to further the corporation's illegal objective, or (3) where the employees "engage in a series of discriminatory acts as opposed to a single action" over a significant period

of time in the employment setting. Grinder v. City of Auburn, Ala., 618 F.3d 1240, 1263 (11th Cir. 2010); Dickerson, 200 F.3d at 769.

Plaintiff does not invoke any of these exceptions in her brief. Instead, she argues for the application of an exception highlighted in a Sixth Circuit case, Johnson v. Hall & Dales Gen. Hosp., 40 F.3d 837, 840 (6th Cir. 1994).  Instead of following Sixth Circuit law, the Court will grant leave to Plaintiff to allow her to plead an exception to the intracorporate conspiracy doctrine, as long as she can do so in good faith.

Plaintiff must also remedy other pleading deficiencies in this claim; namely, the conclusory nature of the conspiracy allegations.  Plaintiff must do more than just allege a conspiracy existed.  Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir.1984).  Rather, Plaintiff must make "particularized allegations that a conspiracy existed."  Pittman v. State Farm Fire & Casualty Co., 662 F. App'x 873, 880 (11th Cir. 2016). Lastly, Plaintiff must identify under which provision of section 1985 she proceeds.

### D. Title VII and ADEA Claims (counts six-eight)

Claims against Individual Defendants

Defendants move to dismiss the Title VII and ADEA claims against the individual Defendants on the basis that they are not employers under Title VII and the ADEA.  Defendants are correct.  See Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006) ("relief granted under Title VII is against the employer, not against individual employees whose actions would constitute a violation of the Act") (brackets removed) (citing Hinson v. Clinch County Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000); Busby v. City of Orlando, 931 F.2d at 772); Smith v. Lomax, 45 F.3d 402, 403 n.4 (11th Cir.1995) (individuals cannot be held liable under the ADEA or Title VII)

(internal citation marks omitted)).  Plaintiff does not object to the dismissal of the individual Defendants from these counts. (Resp. at 12.)  Therefore, these claims are dismissed with prejudice against the individual Defendants.

Claims against PBSB

The Complaint alleges that all conditions precedent have been fulfilled, that she filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging race, age and sex discrimination as well as retaliation. (Compl. ¶ 6.)  The EEOC charge and the right to sue letter are not attached to the Complaint.  Defendants state that they only received a Notice of Charge and that document does not indicate that Plaintiff brought an age discrimination claim to the EEOC.   Based on this record, the Court cannot determine whether the age discrimination claim has been exhausted.  See Gregory v. Georgia Dep't of Human Resources, 355 F.3d 1277, 1280 (11th Cir. 2004) ("a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination").

"[W]hen a party moves to dismiss for failure to exhaust administrative remedies, courts can consider facts outside the pleadings to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." (citing Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008) Tillery v. U.S. Dept. of Homeland Secur., 402 Fed. Appx. 421, 424-25 (11th Cir. 2010)) (internal quotation marks omitted).  When Plaintiff files the amended complaint, she should attach documents in support of her allegation that she exhausted her claims.  See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (a court can consider a document on a motion to dismiss if the attached document is central to the plaintiff's claim and undisputed).

14

Next, the Court will examine whether Plaintiff has properly alleged a Title VII claim and ADEA claim.[11]  To establish a prima facie case of employment discrimination, Plaintiff must show that "1) she is a member of a protected class, (2) she was qualified for the job, (3) she suffered an adverse employment action, and (4) a similarly situated individual outside her protected class was treated more favorably." Castillo v. Allegro Resort Mktg., 603 F. App'x 913, 917 (11th Cir. 2105) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973)). The Complaint does not provide anything more than conclusory allegations about how Plaintiff was treated differently from other similarly situated individuals. With respect to an adverse action, the Complaint is not clear whether the adverse action is the removal from her classroom in 2014, the "harass[ment]" in November of 2014, or incidents relating to the December 2015 teacher work day meeting.[12] (Compl. ¶¶ 14-15, 22.)  Likewise, the Complaint does not identify how Plaintiff was treated differently than other similarly situated teachers.  (Compl. ¶¶ 28, 78.)

Equally deficient is the retaliation claim.[13]  A prima facie case of retaliation requires a showing that the plaintiff engaging in statutorily protected expression, suffered an adverse employment action and a causal relationship between the two. McCann v. Tillman, 526 F.3d 1370, 1375 (11th Cir. 2008).  The only protected activity clearly alleged in the Complaint is the

---

[11] The elements to establish an employment discrimination claim under the ADEA are the same as under Title VII. Chapman v. A1 Transport, 229 F.3d 1012, 1024 (11th Cir. 2000).

[12] Peppered throughout the Complaint are references to a "hostile work environment" and harassment. (Compl. ¶¶ 26, 29, 79.)  It is not clear if Plaintiff seeks to bring a hostile work environment claim.  If so, Plaintiff should clarify this in the amended pleading.

[13] Title VII and the ADEA have the same requirements for a retaliation claim.  See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir.1993)

filing of the EEOC charge, which appears to have been in 2016.[14] (Compl. ¶ 6.)  However, the adverse actions alleged - transferring, singling out and harassment - occurred prior to 2016. (Compl. ¶ ¶ 14, 18-19, 22.)  That stated, the Court will permit Plaintiff leave to amend to clarify this count as the lack of clarity makes it difficult for the Court to determine whether the elements have fulfilled.[15]

### Damages under Title VII and the ADEA

Defendants assert that punitive damages cannot be sought against a government entity or political subdivision under Title VII and the ADEA.  The Court agrees.  No punitive damages may be pursued under Title VII against PBSB.  42 U.S.C.A. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision"); see Cabrera-Rodriguez v. School Bd. of Miami-Dade County, Fla., No. 12–21388–Civ, 2012 WL 4338848, at * 4 (S.D. Fla. Sept. 20, 2012). With respect to the ADEA, no punitive damages or compensatory damages for pain and suffering are permissible under the ADEA.  Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435, 1446 (11th Cir. 1985); Smith v .Vestavia Hills Board of Education, — F. Supp. 3d — , 2016 WL 6462045, at * 4 (S.D. Ala. Nov.1, 2016).

For these reasons, the Court strikes Plaintiff's relief for punitive damages under Title VII, and punitive and compensatory damages for pain and suffering under the ADEA.

---

[14] The Complaint states that Plaintiff received her right to sue letter on June 24, 2016. (Compl. ¶ 6.)

[15] Adding to the Court's confusion is the lack of challenge to any of these arguments in Plaintiff's response to the motion to dismiss.

### E. Permanent Injunction

In the prayer for relief, the Complaint seeks a permanent injunction requiring Defendants to adopt appropriate policies relating to hiring and supervision of employees and enjoining Defendants from engaging in employment practices that retaliate against employees who complain about discrimination. Defendants seek to dismiss the request in the Complaint for a permanent injunction. The Court denies this request without prejudice. If Plaintiff is successful, the Court can address appropriate relief at that time.

### F. Count Eleven

Count eleven is entitled "Respondeat Superior of the District" and alleges that PBSB is "liable for the unlawful and unconstitutional actions and damages against Plaintiff" by the individual Defendants. (Compl. ¶ 106.) The Court does not know what relief Plaintiff seeks in this claim. With respect to section 1983, a local government entity cannot be liable for section 1983 claims under a theory of respondeat superior. Monell v. Department of Social Svcs. of City of New York, 436 U.S. 658, 691 (1978). With respect to the Title VII and ADEA claims, the PBSB, and not the individual Defendants, is the only Defendant that can be liable under these statutes, making respondeat superior inapplicable.

The Court will dismiss this count and provide Plaintiff with leave to amend to allege a legally recognizable cause of action under the doctrine of respondeat superior.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss (DE 11) is **GRANTED**.  Plaintiff is granted leave to amend withing 14 days of the date of entry of this Order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 28th day of March, 2017.

_____
KENNETH A. MARRA
United States District Judge