UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil No. 16-81612-CIV-Marra/Matthewman

MALIK LEIGH, ESQ.,

     Plaintiff,

vs.

ROBERT AVOSSA, et al.,

     Defendants.

_____/

FILED by _____ D.C.

JUN 2 8 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

Civil No. 16-81624-CIV-Marra/Matthewman

RAQUEL ABRAMS-JACKSON,

     Plaintiff,

vs.

ROBERT AVOSSA, et al.,

     Defendants.

_____/

## ORDER SUPPLEMENTING THE COURT'S PRIOR DISCOVERY ORDERS AND ADDRESSING SOCIAL MEDIA POSTS OF ATTORNEY MALIK LEIGH, ESQ.

     This Order supplements the Court's prior discovery Orders on a flurry of discovery motions filed by all of the parties, and addresses the social media posts of attorney Malik Leigh, Esq., in the following two pending federal civil cases.

This matter was previously before the Court in case number 16-cv-81612-Marra/Matthewman upon Defendants, Robert Avossa, Cheryl McKeever, Camille Coleman, Dianna Weinbaum, Elvis Epps, David Christiansen, Darron Davis, Joseph Lee, and Palm Beach County School District (Board)[1]'s Motion for a Protective Order [DE 38], Plaintiff, Malik Leigh, Esq.'s Motion to Compel Deposition of Marcia Andrews [DEs 39, 40], Plaintiff's Motion to Extend Discovery Deadline and Motion to Compel Deposition [DE 46], and Defendants' Motion to Suspend and Reschedule the Deposition of Defendants Avossa and Epps for Safety Concerns and for Protective Order [DE 48]. These matters were referred to the undersigned by United States District Judge Kenneth A. Marra. *See* DE 34. This Order is intended to supplement the Court's June 7, 2017 Order [DE 52] and the Court's June 14, 2017 Order [DE 54] in case number 16-cv-81612-Marra/Matthewman.

### Case Number 16-cv-81624-Marra/Matthewman

This matter was also previously before the Court in case number 16-cv-81624-Marra/Matthewman upon Defendants, Robert Avossa, Cheryl McKeever, and Palm Beach County School District (Board)'s Motion for a Protective Order [DE 36], Plaintiff, Raquel Abrams-Jackson's Motion to Compel Deposition of Marcia Andrews [DE 37], Plaintiff's Motion to Extend Discovery Deadline and Motion to Compel Deposition [DE 42], and Defendants' Motion to Suspend and Reschedule the Deposition of Defendants Avossa and Epps for Safety Concerns and for Protective Order [DE 44]. These matters were referred to the undersigned by United States District Judge Kenneth A. Marra. *See* DE 28. This Order is intended to

---

[1] This is how the Plaintiffs in both cases have named this specific defendant: "Palm Beach County School District (Board)."

supplement the Court's June 7, 2017 Order [DE 48] and the Court's June 14, 2017 Order [DE 51] in case number 16-cv-81624-Marra/Matthewman.

## I.    Preliminary Statement

Social media posting is a relatively recent phenomena engaged in by many people in our society.    While such posting can serve legitimate social purposes, many posts result in rude, vulgar or profane social discourse.    Some posts even include actual or perceived threats.

This Order addresses certain social media posts made during the course of federal civil litigation by a Florida licensed attorney, Malik Leigh, Esq., who is a plaintiff representing himself in case number 16-cv-81612-Marra/Matthewman, and who also represents a separate plaintiff in case number 16-cv-81624-Marra/Matthewman.[2]    Both lawsuits assert improper employment practices allegedly engaged in by Palm Beach County School District Superintendent Robert Avossa, the Palm Beach County School District (Board), and others.

In case number 16-cv-81612-Marra/Matthewman, attorney Malik Leigh, Esq., alleges that he was employed as a "Law Teacher" for a period of approximately nine months at Palm Beach Lakes Community High School in West Palm Beach, Florida, and that he was, *inter alia,* harassed and improperly terminated from that position. [DE 1, ¶¶ 2, 19]    In case number 16-cv-81624-Marra/Matthewman, Mr. Leigh represents Plaintiff Raquel Abrams-Jackson, a teacher, who claims she was discriminated against by the Palm Beach County School District (Board).[3]  [DE 32, ¶ 2].

---

[2] The Court notes that Mr. Leigh's co-counsel in these two cases is Danielle Renee Watson, Esq.
[3] The Court notes that Mr. Leigh also represents Plaintiff Loretta Parish-Carter in a pending employment discrimination lawsuit in this District against the same general defendants in case number 16-cv-81623-Rosenberg/Hopkins, but that case is not pending before the undersigned and is not addressed in this Order.

The Defendants in the two federal cases pending before the undersigned have asserted that Mr. Leigh's social posts were improper, unprofessional, disparaging, and, at times, impliedly or actually threatening. Because of the disturbing contents of those posts, Defendants cancelled certain depositions out of safety concerns and sought a protective order from this Court. Since Mr. Leigh is a member of the Bar of the United States District Court for the Southern District of Florida, and a member of The Florida Bar, his social media posts must be analyzed within the framework of the applicable Florida Bar rules and the rules of this Court.

As a citizen and attorney, Mr. Leigh is certainly well within his rights to post on social media. However, as a member of the Bar of this Court and The Florida Bar, he cannot post on social media in connection with the practice of law in a manner that is prejudicial to the administration of justice. Fla. Bar R. 4-8.4(d). Nor can he, in connection with the practice of law, knowingly, or through callous indifference, disparage, humiliate or discriminate against litigants, witnesses or other lawyers on any basis in his social media posts. Fla. Bar R. 4-8.4(d). This is especially true when his posts are directed against defendants, deponents, or attorneys in two federal civil lawsuits pending before this Court. And, pursuant to the rules of this Court, Mr. Leigh's social posts related to litigation in this Court must be within the bounds of cooperation, professionalism and civility. S.D. Fla. L.R. 11.1(c). The Court has carefully considered the social media posts made by Mr. Leigh, the arguments of all the parties in these two cases, and the applicable rules and law. This is a very serious matter with serious consequences.

For the following reasons, the Court finds that certain social media posts made by Mr. Leigh during the course of these two pending federal civil lawsuits violated both the rules of the Florida Bar and the rules of this Court. Some of the social media posts directed to defendants,

4

witnesses, deponents or attorneys in these two federal civil cases were disparaging, humiliating and unprofessional. Other posts were reasonably interpreted as veiled threats to defendants, witnesses, deponents or attorneys involved in these two cases. The posts in their totality were prejudicial to the administration of justice, and the improper posts caused a disruption of the discovery process in these two federal civil cases. The posts also caused this Court to enter Orders on an expedited basis granting protective relief and setting special security conditions (including the presence of an armed police officer) for the remaining depositions.

## II.    Background

The contentious discovery disputes in this case began when the Plaintiffs in each case sought to depose a School Board member, Ms. Marcia Andrews. The Defendants in each case moved for a protective order to preclude the Plaintiffs from taking Ms. Andrews' deposition, and the Plaintiffs moved to compel Ms. Andrews' deposition. Since the motions were filed just prior to the scheduled deposition date, and very close to the discovery cut-off dates in both cases, the Court expedited the briefing, hearing and disposition of the motions.

On May 30, 2017, the Court initially held a very prompt[4] telephonic hearing on the motions regarding Marcia Andrews' deposition [16-cv-81612, DEs 38-40; 16-cv-81624, DEs 36-37]. Also on May 30, 2017, after the conclusion of the telephonic hearing, the Court entered its initial Order Granting in Part Defendants' Motion for a Protective Order and Denying in Part Plaintiff's Motion to Compel Deposition of Marcia Andrews in each case. *See* 16-cv-81612, DE 45; 16-cv-81624, DE 41. The Court struck Plaintiff's Notices of Deposition which scheduled Marcia Andrews' deposition for May 31, 2017, as the Notices of Deposition were

---

[4] The first motion relating to Ms. Andrews' deposition was filed on May 26, 2017, which was the Friday before the Memorial Day holiday weekend, regarding a scheduled Wednesday, May 31, 2017 deposition of Ms. Andrews. The Court held the telephonic hearing on Tuesday, May 30, 2017.

violative of Local Rule 26.1(h) in that the Plaintiffs did not provide sufficient advance notice prior to the scheduled deposition. *Id.* The Court found that Plaintiffs in both cases violated the local rules of this Court in noticing the deposition of Ms. Andrews on May 25, 2017, for a deposition to be held on May 31, 2017. The Court also required the parties to confer in good faith and try to reach an agreement about whether or not Marcia Andrews should be required to appear for her deposition at all. *Id.*

On May 31, 2017, the day after the telephonic hearing, the Plaintiffs filed their Motions to Extend Discovery Deadline and to Compel Deposition in each case [16-cv-81612, DE 46; 16-cv-81624, DE 42], and Defendants filed their Motion to Suspend and Reschedule the Deposition of Defendants Avossa and Epps for Safety Concerns and for Protective Order [16-cv-81612, DE 48; 16-cv-81624, DE 44]. According to the motions, the Defendants abruptly ended the deposition of Elvis Epps on May 31, 2017, after learning of Malik Leigh, Esq.'s social media posts. Upon review of those motions, the Court set a hearing for June 5, 2017, requiring the in-person appearance of all counsel.

### III. Malik Leigh, Esq.'s Relevant Social Media Posts

Some of the following posts were from Mr. Leigh's personal account, Malik Leigh, Esq., while others are from the Watson Leigh law firm's account. All of the social media posts are public. Many of the posts are directly related to this litigation. A few of the posts, although not directly related to this litigation, have violent or morbid themes that provide context to certain other litigation-related posts which raised legitimate safety concerns in this litigation. The Court has quoted many of Mr. Leigh's social media posts verbatim in order to insure a complete and clear record.

On December 5, 2016[5], Mr. Leigh posted an article about Ku Klux Klan members in North Carolina and wrote in relevant part: "where Robert Avossa[6] got his start...pushing through district change that resegregated the Charlotte Mecklenburg Schools District." [16-cv-81612, DE 50-8, p. 13].

On May 26, 2016, Mr. Leigh posted that he had "checked in" at the School District of Palm Beach County building and wrote, "[h]ahahhaha......totally trolling!" [16-cv-81612, DE 50-8, p. 12].

On June 17, 2016, Mr. Leigh posted the following: "[s]o, it appears that the main AP that was forcing teachers to change grades is trying to leave the country prior to our hearing next Tuesday. She is subpoena'd [sic], yet, she's trying to get away so she doesn't have to give testimony. JAIL DEAR.....YOU ARE GOING TO JAIL!" [16-cv-81612, DE 48-7, p. 1].

On June 21, 2016, Mr. Leigh posted a lengthy message specifically referencing "Malik v. Robert Avossa, PBCSD, et al." and talking about his legal arguments in the case. [16-cv-81612, DE 48-7, p. 2]. Mr. Leigh stated in relevant part the following:

> However, the PRINCIPAL CHERYL McKEEVER[7] WAS SELLING HER OWN JEWELRY AT SCHOOL FOR HER OWN PERSONAL GAIN AND WAS ADVERTISING IT ON THE DISTRICT'S EMAIL. (cant [sic] make this stuff up!). And though I referenced her and the teacher that was actually (quietly) made to pay back money...somehow, McKeever was and still is able to squeak by. Cmon District...I know you read these posts...JOO GOT SUM 'SPLAININ TO DO! (Equal Protection ~unfair, unequal treatment). (And yes, I am going to bring up the other teacher...I know all about it! You know I do!). I sent a settlement letter to EP to be NICE...I suggest you accept it. That is the ONLY ONE you will receive...EVER! Malik Leigh, Esq. <----(that Esq. thing means, I know what I'm doing here!)."

---

[5] The Court notes that all of the posts listed were made subsequent to the filing of the two pending federal lawsuits.
[6] Mr. Avossa is the Superintendent of the Palm Beach County School District and a defendant in both of the pending federal civil lawsuits.
[7] Ms. McKeever is the former Head Principal of Palm Beach Lakes High School, an employee of the Palm Beach County School District, and a defendant in case numbers 16-cv-81612 and 16-cv-81624.

*Id.*

On August 19, 2016, Mr. Leigh posted, "[s]ee, trying to remove me from the school wasn't going to prevent me from getting the info you don't want me to know!  I'LL STILL FIND OUT!!!"  [16-cv-81612, DE 48-7, p. 3].  On the same date, he also posted, "I wonder how the PBCSD is going to explain their area superintendents lying about Doctorates or Covering up testing fraud?!  ooooooohhhhhh!!"  *Id.* at p. 4.

On September 24, 2016, Mr. Leigh posted an article from Georgia calling Robert Avossa "silly but dangerous" and wrote the following: "For teachers in Palm Beach County…understand that your rights as teachers are in THIS guy's hands.  And while Charlotte-Macklenberg schools are ridiculously segregated as they were in the Brown days, the 'change' you swear by isn't what you think."  [16-cv-81612, DE 48-7, p. 5].

In February 2017, Mr. Leigh posted an incredibly descriptive, morbid entry about how much he hated a former teacher who had died and all of the horrible things he wanted to happen to her dead body and at her funeral.  [16-cv-81612, DE 50-8, p. 14].  For example, he called the teacher a "worthless piece of shit" and a "worthless bitch" who "died this week of the greatest cancer God ever created."  *Id.*  Mr. Leigh also wrote that "[i]f she was cremated, I hope the fire causes her body parts to pop and explode, with skin getting stuck in spots that don't burn and she ends up looking like a beef jerky that's been submerged in water, then left outside again."  *Id.*  He went even farther and stated that he hoped that "everyone at the funeral gets hit on the head by a rock and they all get amnesia and 36 hour alzheimers and completely forget who she is and she is forgotten…."  *Id.*

On February 4, 2017, Mr. Leigh posted an image from a film depicting an individual using a weapon and implied that he would like to do the same to a losing soccer team.

8

[16-cv-81612, DE 50-8, p. 15]. On February 11, 2017, Mr. Leigh posted "I can't hate the US and it's [sic] people more right now. Just need a mass extinction event right now!" [16-cv-81612, DE 50-8, p. 9]. On February 15, 2017, Mr. Leigh posted an article about the Lake Worth School principal being officially removed from his position and wrote the following:

> Elvis Epps[8] is the interim Principal at Lake Worth High School? PARENTS IMMEDIATELY GIVE ME A CALL. Any parents with students at Lake Worth High School...you need this bit of information on your Civil Rights violating principal. Yup...I QUADRUPLE DOG DARE YOU TO SAY SOMETHING!!!!!! PALM BEACH COUNTY SCHOOL DISTRICT PARENTS LISTEN UP. We are preparing a huge education discrimination against Betsy DeVos....I mean Robert Avossa's insanely corrupt school district. Let me know if you want to be a part of it. Malik.

[16-cv-81612, DE 48-7, p. 6].

On May 12, 2017, Mr. Leigh posted using the hashtag "#MomIn5Words." [16-cv-81612, DE 50-8, p. 12]. All he wrote was "I wish mine would Die!" *Id.*

On May 26, 2017, Mr. Leigh posted the following:

> So Danielle and I are Deposing Cheryl McKeever So in [sic] get to ask her about all that Bullshit about my so-called wholly inappropriate exam...and how much money she's stolen from the schools. Darron Davis[9] about his lying ass[.] Elvis Epps about trapping kids in a room And forcing himself into locked cell phones without parents [sic] permission. Robert Avossa about lying on TV about me and other stuff. And generally why he said racist shit to me at a table full of people....WHOM I HAVE THEIR INFO. And Marcia Andrews. [Y]up. [T]hey are trying hard not to let me depose her. Her amazing affidavit detailing how the district retaliate on people is the gift that keeps on giving. [T]his week is gonna be FUN!!!!!!!"

[16-cv-81612, DE 48-7, p. 7].

---

[8] Mr. Epps is a Human Resources Manager with Professional Standards in the Palm Beach County School District and a defendant in case number 16-cv-81612.
[9] Mr. Davis is the Area 4 Human Resources Manager in the Palm Beach County School District and a defendant in case number 16-cv-81612.

On May 30, 2017, Mr. Leigh posted, "GOT me in here SMASHING this school board person that investigated me. ADMISSIONS BABY!!!" [16-cv-81612, DE 48-3]. On the same date, he also posted,

> I had so much giggidy gained in testimony today…and tmrw I get to depose the MFing [sic] Superintendent[10]. Next week, MCKEEVER!"

[16-cv-81612, DE 48-4].

On May 30, 2017, Mr. Leigh posted "So, who gets testimony proving Camille Coleman[11] is a LIAR….and proved that the teachers contracts are based upon a lie? WE DO!" [16-cv-81612, DE 48-7, p. 8].

On May 31, 2017, Mr. Leigh posted on social media the following:

> Didn't get a chance to ride this morning but I'm thinking about you! After this round if [sic] depos in the next 2 weeks, would love to start a shooting campaign. Sunday workday.

[16-cv-81612, DE 46-5; 48-5].

Later on May 31, 2017, Plaintiff posted the following: "They claim that I'm going to shoot up the school or something because of this pic. [M]aybe they didn't see my personal website. [R]eally?" [16-cv-81612, DE 48-6]. On the same date, Plaintiff posted the following: "'[s]upposedly' District police are investigating an IG picture of me as threatening…After yesterday, they will try anything. #wontworkkids." *Id.* Underneath this post is a demeaning stock photograph of a law enforcement officer. *Id.*

On June 2, 2017, after the Defendants filed their motions raising safety concerns about the upcoming depositions due to the "start a shooting campaign" and other content of Mr.

---

[10] The "MFing Superintendent" referred to by Mr. Leigh is a defendant in these two federal civil cases, Mr. Robert Avossa, the Superintendent of the Palm Beach County School District.
[11] Ms. Coleman is the Area 4 Superintendent of the Palm Beach County School District and a defendant in 16-cv-81612.

Leigh's posts, he nonetheless posted "Exposing the Palm Beach County School District will be like Making A Murder.  Wish we had a film crew!"  [16-cv-81612, DE 50-8, p. 10].

IV.     June 5, 2017 Hearing on Motions

On June 5, 2017, the parties' counsel appeared in person before the Court for a hearing on all of the pending discovery motions in both cases.   In order to promote judicial and attorney economy, the undersigned and United States Magistrate Judge James M. Hopkins sat together on the bench, as the same motion addressing the same safety concerns based on the social media posts had been filed in a case pending before Judge Hopkins, *Parish-Carter v. Avossa, et al.*, 16-cv81623-Rosenberg/Hopkins.   Counsel for all parties consented to this procedure.

When questioned at length about his social media posts, Mr. Leigh did not seem to fully acknowledge or comprehend the impropriety and unprofessionalism of his public posts.   Nor did he seem at all concerned about the disparaging, discourteous and humiliating posts he had authored against the Defendants and witnesses in pending federal civil litigation.   He did not acknowledge that his posts were impliedly or actually threatening and would be expected to cause concern and fear in the Defendants, witnesses, deponents and attorneys involved in these cases.   He repeatedly expressed outrage or skepticism at the Defendants' concern for the deponents' safety and security, and he seemed to accuse the Defendants of simply pretending to be fearful or concerned by his social media posts.   His cavalier attitude, in light of the nature and consequences of his posts, was surprising and disappointing to the Court.

Mr. Leigh asserted that some of his social media posts were being misinterpreted.   For example, he stated that when he mentioned a "shooting campaign" in one such post, it was clear that he was referring to photography and not to any type of violence.   Mr. Leigh either would not or could not acknowledge that referring to a "shooting campaign" and upcoming depositions

11

of public school employees in the same sentence, in this day and age of excessive school violence, would reasonably be expected to cause fear to those involved in this litigation. Mr. Leigh would not even express any opinion as to whether some of the epithets he used or comments made in his posts were appropriate or inappropriate. Mr. Leigh argued that his posts were like locker room talk and thus somehow appropriate and acceptable in relation to pending federal civil litigation.

## V.    The Court's Prior Orders

On June 7, 2017, after the conclusion of the June 5, 2017 hearing, the Court entered an Order in each case on Plaintiff's Motion to Extend Discovery Deadline and Motion to Compel Deposition and on Defendants' Motion to Suspend and Reschedule the Deposition of Defendants Avossa and Epps for Safety Concerns and for Protective Order [16-cv-81612, DE 52; 16-cv-81624, DE 48]. The Court granted in part and denied in part the Plaintiffs' motions [16-cv-81612, DE 46; 16-cv-81624, DE 42] in that the Court 1) extended the discovery deadline until June 30, 2017 solely to complete all previously noticed depositions, and 2) granted the Defendants' motions for a protective order requiring that future depositions be held in a secure location with a police officer present. [16-cv-81612, DE 48; 16-cv-81624, DE 44]. *Id.* The Court found that there was good cause for the Defendants' actions in cancelling the depositions based on safety concerns and for filing the motions for relief *Id.* Since the matter was urgent and the Court wanted no further delay in the discovery process, the Court entered an initial Order and advised that it would be entering a further Order explaining the additional bases for granting the Defendants' motions, and addressing any related issues, in due course. *Id.* This is that Order.

On June 14, 2017, the Court addressed the issue of Ms. Marcia Andrews' deposition by entering in both cases an Order Granting Defendants' Motion for a Protective Order and Denying Plaintiff's Motion to Compel Deposition of Marcia Andrews [16-cv-81612, DE 54; 16-cv-81624, DE 51]. In essence, the Court's written Orders held that Ms. Andrews' deposition would not go forward at all, and explained the bases for that decision, including the lack of relevance of her testimony. The Court also noted in a footnote that Mr. Leigh had made certain social media posts which raised legitimate safety, disparagement, harassment, and other concerns which militated in favor of the Court granting a motion for protective order precluding the deposition of Ms. Andrews. *Id.* Specifically, the Court explained that there were several reasons for granting the Defendants' request that Ms. Andrews' deposition be precluded, only one of which involved the social media posts at issue. The Court advised that it would be entering a further Order addressing Mr. Leigh's social media posts in due course, as they were relevant, in part, to the motion for protective order entered as to Ms. Andrews' deposition. *Id.* This too is that Order.

As the discovery cut-off in this case was originally set for June 15, 2017, and was ultimately extended to June 30, 2017 in order for the parties to complete all previously noticed depositions, the Court needed to enter Orders on the pending discovery motions quickly and expeditiously. Fed. R. Civ. P. 1. (The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). This Order is intended to supplement those prior Orders [16-cv-81612, DEs 52, 54; 16-cv-81624, DEs 48, 51] with a further explanation of the Court's bases for entering the prior Orders and to fully address the Court's serious concerns with Mr. Leigh's social media posts. Those social media posts

provide support for the Court not permitting Marcia Andrews' deposition to go forward and for the Court requiring that all further depositions be taken in a secure facility, with a law enforcement officer present, in such a manner as to ensure the safety and security of the deponents and attorneys.

VI.    Court's Findings and Analysis

The Court is disturbed, disappointed, and, quite frankly, shocked by Mr. Leigh's social media posts.    Mr. Leigh admitted that he made the posts and he never once apologized for them. In fact, Mr. Leigh's attitude and argument seemed to be that he had done nothing wrong and that the Defendants were the ones who were blowing this matter out of proportion to gain a tactical advantage and halt the depositions.    Nothing could be further from the truth.

The Court finds that the majority of the posts made by Mr. Leigh were made in connection with the practice of law.    A few of the posts, although not necessarily made in connection with the practice of law or directed to this litigation, such as those about the deceased teacher, his mother, a soccer team, and the citizens of United States, nonetheless, provide disturbing and violent context to his other litigation-related posts which raised legitimate safety concerns.

Further, the Court finds that Mr. Leigh's posts were prejudicial to the administration of justice in many respects.    The posts unnecessarily complicated, delayed and interfered with the discovery process in these two pending federal civil cases, as well as with the Court's Scheduling Orders.    The posts directly caused extensive litigation and the expenditure of significant judicial and attorney time and resources in these two pending federal lawsuits    The Court further finds that Mr. Leigh, through his social media posts, knowingly, or through callous indifference, disparaged, humiliated and discriminated against litigants, witnesses and attorneys in these two

14

pending federal civil lawsuits. The posts fell well outside the bounds of cooperation, professionalism and civility required by this Court from attorneys who appear before this Court. This is not how an attorney is supposed to practice law in this Court.

For example, Mr. Leigh posted, just prior to Defendant Superintendent Robert Avossa's scheduled deposition, that Mr. Avossa was a "MFing Superintendent." In no court in this country is such a disparaging, humiliating and discriminatory comment regarding a defendant in ongoing civil litigation by a member of the Bar permitted. This is the type of comment that puts attorneys and our legal system in disrepute in the eyes of the public. Further, Mr. Leigh's posts that he was "totally trolling" Defendant Palm Beach County School District, that an employee of Defendant Palm Beach County School District was going to "JAIL DEAR...YOU ARE GOING TO JAIL", that Defendant Darron Davis was a "lying ass", that Defendant "Camille Coleman "is a LIAR", that he would question Defendant Cheryl McKeever on her "bullshit", and other such posts, are equally improper, unethical, disparaging, and humiliating. Mr. Leigh is simply not permitted by our Court and ethical rules to engage in such public commentary directed to defendants, deponents, witnesses or attorneys in ongoing federal civil litigation.

Rule 4-8.4(d) of the Rules Regulating the Florida Bar states that a lawyer shall not "engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants...witnesses...or other lawyers on any basis...." Additionally, Southern District of Florida Local Rule 11.1(c) states the following: "The standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating the Florida Bar. For a violation of any of those canons in connection with any

matter pending before this Court, an attorney may be subjected to appropriate disciplinary action." Finally, the Introductory Statement of the Local Rules states in relevant part, "[m]embers of the bar and the Court are proud of the long tradition of courteous practice in the Southern District of Florida. Indeed, it is a fundamental tenet of this Court that attorneys in this District be governed at all times by a spirit of cooperation, professionalism, and civility." The Court finds that Mr. Leigh's posts violated the above-mentioned rules.

The Court also finds that the social media posts were reckless and reasonably would have been expected to frighten, intimidate and scare the Defendants, witnesses, deponents, and attorneys in this case. A May 31, 2017 post states that Mr. Leigh would like to "start a shooting campaign" after two weeks of depositions in these cases. Mr. Leigh knew or should have known that this language would reasonably and naturally be perceived as a threat of violence. It was not unreasonable for the Defendants, their counsel, and the deponents to question their safety and security at the upcoming depositions, especially taking into account the violent language and images used in many of Mr. Leigh's posts.

In this regard, Mr. Leigh has made many violent, hostile, or angry social media posts. He posted about hating the United States and the need for a "mass extinction." [16-cv-81612, DE 50-8, p. 9]. He posted on May 12, 2017, using the hashtag "#MomIn5Words", "I wish mine would Die!" [16-cv-81612, DE 50-8, p. 11]. He posted about the death of a high school teacher and about all of the violent things he wanted to happen at her funeral. [16-cv-81612, DE 50-8, p. 14]. Mr. Leigh also posted a picture showing a gun being fired and posted that it will be "[m]e next time im [sic] in front of the #Liverpool back line!!" [16-cv-81612, DE 50-8, p. 15]. Even though these few specific cited posts were not specifically made in reference to this ongoing federal civil litigation, they serve as the violent, disturbingly morbid, and extremely

16

aggressive backdrop to his other posts, such as the one about a "shooting campaign", and provide a dangerous context to his litigation-related posts.

School violence is a very serious issue in this country. If a student had made similar posts, it would be reasonably expected that the police would immediately investigate the comments, take them seriously, and take all appropriate action to protect other students and teachers. Mr. Leigh, as a member of the Bar and a former self-described "Law Teacher", cannot be held to a lesser standard. His social media posts, especially those directly related to these two cases and those persons involved in these two cases, are not mere words that this Court can or will lightly disregard. The safety of litigants, deponents, and counsel are extremely serious issues in our courts.

The Court finds that Mr. Leigh knew or should have known that his posts would disrupt the depositions, cause safety concerns, and strike fear in the hearts of the Defendants, witnesses, and attorneys involved in these two pending federal lawsuits. Thus, as a prophylactic measure, the Court required that future depositions take place in a secure location (requiring all participants in the deposition to pass through a metal detector) with an armed law enforcement officer present during the depositions, as requested by the Defendants. The fact that these protective measures had to be taken by the Court--due to the actions of a member of this Court's Bar--is truly shocking.

Further, the Court notes with extreme disapproval that several of the posts disparage, humiliate, or insult various witnesses, deponents, parties or attorneys in these cases, and several posts call witnesses and/or parties liars or accuse them of wrongdoing or lying. For example, as noted previously, Mr. Leigh referred to Defendant Robert Avossa, the Superintendent of the Palm Beach County School District, as a "MFing Superintendent." How a member of the Bar

17

of this Court could make such a comment in direct relation to a party in an ongoing federal lawsuit is beyond comprehension. Mr. Leigh repeatedly implied in various public posts that Mr. Avossa is racist and also called Mr. Avossa a liar.

Mr. Leigh also accused Ms. McKeever of violating the rules by selling items at a school and stealing money from the schools and said he would question her about "bullshit." Mr. Leigh called Darron Davis a "lying ass." He posted that Elvis Epps trapped children in a room and searched their locked cell phones without parental permission. In sum, Mr. Leigh disparaged and humiliated these individuals, all of whom are the Defendants, witnesses, or deponents in these two cases, in violation of the Rules Regulating the Florida Bar and our Local Rules. In this regard, Mr. Leigh's posts and comments were unprofessional, unethical, improper and disparaging. There is no excuse for these comments, and Mr. Leigh should know better.

The Court also finds that several of Mr. Leigh's posts appear to be intended to threaten the Defendants or witnesses. He clearly expected that the Defendants would locate and read his posts, as he explicitly said so in his June 21, 2016 post. [16-cv-81612, DE 48-7, p. 2]. Mr. Leigh then threatened to reveal certain information that would harm the Defendants' case if they did not settle with him. He also threatened a potential witness, falsely stating "JAIL DEAR.....YOU ARE GOING TO JAIL!" [16-cv-81612, DE 48-7, p. 1]. This is highly inappropriate, unethical behavior, and attorneys in this District shall not be permitted to engage in such conduct.

As to the deposition of Marcia Andrews, the Court had a multitude of legal and factual bases for not allowing the Plaintiffs to depose Marcia Andrews, and those reasons were discussed in the Court's prior Orders relating to her deposition. *See* 16-cv-81612, DE 54;

16-cv-81624, DE 51. In further support of those two Orders, the Court notes first that Mr. Leigh wrote in a social media post that the Defendants were trying hard not to let the Plaintiffs depose Ms. Andrews, a member of the Palm Beach County School Board, and that he wanted to depose her solely regarding her affidavit detailing how the District retaliates against people. As the Court found in its prior Orders [16-cv-81612, DE 54; 16-cv-81624, DE 51], the affidavit to which Mr. Leigh was referring is not relevant to the facts of this case and is stale.

Further, the Court notes that the content and tone of Mr. Leigh's posts make it seem as if he is treating these cases, at least in part, as a game and that he wants to inconvenience and embarrass the Defendants and witnesses, such as Ms. Andrews, to the greatest extent possible. In light of the scant relevance proffered by Plaintiffs for attempting to take Ms. Andrews' deposition, the staleness of her proffered testimony, and her recent affidavit attesting that she has no knowledge of the matters at issue in these two lawsuits, the social media posts tend to prove that her deposition was being taken primarily for purposes of harassment and inconvenience. The Court will not allow Ms. Andrews to become a pawn in this litigation. In light of Mr. Leigh's posts, the Court finds that Ms. Andrews' deposition was scheduled primarily to harass her and the Defendants. Attorneys are required to be cooperative, civil, professional and courteous during the discovery process, not unnecessarily combative, overly aggressive and unprofessional. Thus, the Court disallowed Ms. Andrews' deposition, in part, on the basis of Mr. Leigh's social media posts.

Finally, the Court notes that Mr. Leigh posted an inappropriate comment--directly related to these two pending lawsuits--as recently as June 2, 2017, after the Defendants filed their motions for protective order. This comment stated: "Exposing the Palm Beach County School District will be like Making A Murder. Wish we had a film crew!" [16-cv-81612, DE 50-8, p.

19

10]. Mr. Leigh's post-motion comment about "Making a Murder" in relation to the Defendants in these two cases, after all of the problems and fear his previous social media posts had caused in these two cases, is simply irresponsible. Using the word "murder" in relation to these cases, after the Defendants had raised legitimate safety concerns about his prior posts, showed extremely poor judgment at best, and constituted a veiled threat or reference to future violence at worst. This post shows that Mr. Leigh has no remorse or concern for his improper conduct.

Mr. Leigh took the oath of admission to The Florida Bar in 2011, which stated in relevant part: "I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged." Mr. Leigh's social media posts, and his conduct in these two federal lawsuits, are wholly inconsistent with his oath of admission to The Florida Bar.

In light of the foregoing, the Court **ORDERS** as follows:

1. Pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), and the inherent authority and jurisdiction of this Court, Mr. Leigh shall pay the Defendants in both cases for attorney's fees expended by defense counsel in 1) filing and litigating the Defendants' Motion to Suspend and Reschedule the Deposition of Defendants Avossa and Epps for Safety Concerns and for Protective Order [16-cv-81612, DE 48; 16-cv-81624, DE 44] and 2) filing and litigating the Defendants' Motion for Protective Order [16-cv-81612, DE 38; 16-cv-81624, DE 36]. The Court, therefore, directs counsel for the Defendants in both 16-cv-81612 and 16-cv-81624 to file, within seven (7) days of the date of this Order, a memorandum that addresses the hourly rate of counsel, the time expended, the amount of reasonable attorney's fees and costs that the Defendants incurred in drafting and arguing the Motions to Suspend and Reschedule the

Deposition of Defendants Avossa and Epps for Safety Concerns and for Protective Order, and the Defendants' Motions for Protective Order, as well as any costs incurred. The Defendants may attach an affidavit or affidavits regarding their attorney's fees and costs incurred if they wish to do so. Defendants shall be permitted to file one memorandum applicable to both cases as the matters overlap.[12] Plaintiffs shall then have seven (7) days to file one memorandum in both cases responding and/or objecting to the amount of attorney's fees and costs sought by the Defendants, including the hourly rate of counsel and time claimed to have been expended by the Defendants' counsel on this matter.[13] Thereafter, the Court will determine the amount of attorney's fees to be paid by Mr. Leigh, personally, to the Defendants in each case and enter a further Order directing such payment.

2. Mr. Leigh is hereby ordered to conduct himself properly and ethically in accordance with the applicable Florida Bar Rules and Rules of this Court at all times in these federal civil cases. Any further misconduct by Mr. Leigh may cause the imposition of further sanctions, including but not limited to, the initiation of contempt of court proceedings.

3. Rule 5(b)(1) of the Special Rules Governing the Admission and Practice of Attorneys in the Southern District of Florida states as follows: "Any…Magistrate Judge…shall refer in writing to the [Ad Hoc] Committee [on Attorney Admissions, Peer Review and Attorney Grievance] the name of any attorney he or she has observed practicing

---

[12] Although the Defendants shall only have to prepare one memorandum applicable to both cases, that memorandum must be separately filed in each of the two cases.

[13] Although Plaintiffs shall only have to prepare one memorandum applicable to both cases, that memorandum must be separately filed in both of the two cases.

law in a manner which raises a significant question as to the adequacy of such attorney's ability to represent clients in a competent manner." In light of this rule and the conduct of Mr. Leigh, the Court hereby refers this matter to the Southern District of Florida Ad Hoc Committee on Attorney Admissions, Peer Review and Attorney Grievance. The Court also refers the matter of Mr. Leigh's conduct to the Florida Bar for their consideration.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 28th day of June, 2017.

WILLIAM MATTHEWMAN
United States Magistrate Judge