UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-81624-CIV-MARRA

RAQUEL ABRAMS-JACKSON,

Plaintiff,

vs.

CHERYL MCKEEVER, in her individual
capacity, PALM BEACH COUNTY SCHOOL
DISTRICT (BOARD),

Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendants' Amended Motion for Summary Judgment (DE 72). The Motion is fully briefed and ripe for review. The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I. Background

The facts,[1] as culled from affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom in the light most favorable for the plaintiff, for the purpose of this motion, are as follows:

Plaintiff Raquel Abrams-Jackson ("Plaintiff") began her employment at Defendant Palm

---

[1] Plaintiff has not complied with Rule 56 of the Federal Rules of Civil Procedure or Rule 56.1 of the Local Rules of Civil Procedure. To the extent Plaintiff did not controvert Defendant's facts with evidence supported in the record, Defendant's facts are deemed admitted if they have record support. Furthermore, the Court rejects Plaintiff's factual contentions that are not properly supported. For example, paragraph 10 of Plaintiff's statement controverting Defendant's facts references eight exhibits of over a thousand pages with no pinpoint citations. Plaintiff's Exhibit J includes handwritten notes which are not authenticated. Lastly, Plaintiff's Exhibits H and O are not authenticated and the Court cannot determine what these exhibits are.

Beach County School Board ("PBCS") on August 15, 2007. She worked for approximately two weeks and was hired again on August 23, 2010. She taught at Lake Shore Middle School ("LSMS") until she was transferred to Palm Beach Lakes High School ("PBLHS"). (Pl. Statement of Facts ¶ 1.) For almost two years prior to her transfer to PBLHS, Plaintiff was looking for positions at other schools because she wanted to transfer out of LSMS. (Pl. Dep. 36-38, DE 73-2.) She became eligible to transfer during the 2013-14 school year. (Pl. Dep. 36-38.) After interviewing with PBLHS, Plaintiff's position at LSMS was posted as open before she had a chance to accept the position at PBLHS. She had not planned on accepting the PBLHS position. (Pl. Dep. 31-41.) Defendant Cheryl McKeever ("McKeever"), the principal of PBLHS, offered Plaintiff the teaching position sometime between the end of August through October of 2014. (Pl. Dep. 40.) Plaintiff transferred to PBLHS on October 22, 2014. (Pl. Statement of Facts ¶ 7.) McKeever testified that she did not know Plaintiff prior to the transfer. (McKeever Dep. 327-28, DE 73-3.)

Previously, Plaintiff had been a leading union representative for teachers at LSMS and she continued to be actively involved in the union during her first semester at PBLHS. (Pl. Statement of Facts ¶ 9.)

On April 10, 2015, McKeever issued a corrective memorandum, finding that Plaintiff had used threatening and unprofessional language when she spoke about McKeever to other administrators and staff. (Apr. 10, 2015 letter, DE 32-1.) In July of 2015, Plaintiff wrote to the superintendent, Robert Avossa, and requested a meeting about the upcoming school year. Superintendent Avossa stated that his schedule was unable to accommodate the request but suggested that Plaintiff reach out to her area superintendent. (July 13, 2015 email, DE 73-4.)

2

Plaintiff instead reached out to a different administrator. (July 23, 2015 email, DE 73-4.) Plaintiff's email was forwarded to Plaintiff's area superintendent who recommended that Plaintiff contact McKeever. (July 16, 2015 email, DE 73-4.) On July 22, 2015, McKeever tried to schedule a meeting with Plaintiff, but Plaintiff declined. (July 22, 2015 email; July 30, 2015 email, DE 73-4.)

On September 8, 2015, Plaintiff complained, via letter, to the School Board and the Superintendent about McKeever. The letter criticized McKeever's leadership and provided a list of concerns that needed to be addressed immediately, which included: (1) teachers being put on a "hit list;" (2) the non-reappointment of teachers who refused to change grades of certain students; (3) constant classroom disruptions from the intercom; (4) information not being kept confidential (5) the issuance of incorrect paychecks; (6) threats to staff and teachers; (7) nepotism and (8) coaches performing classroom walkthroughs. (Sept. 8, 2015 letter, DE 73-5.)

On November 9, 2015, McKeever issued a cease and desist letter to Plaintiff regarding disruptive and unprofessional behavior, including conducting union activities on campus without prior approval. (Nov. 9, 2015 letter, DE 32-1.) The collective bargaining agreement ("CBA") between teachers and the School Board requires that union activities not occur during the duty day and require prior arrangement with the principal before meetings occur in the school building. This is designed to ensure that the activities do not interrupt the normal operation of the school. (CBA, DE 73-6.)

Plaintiff testified she did not conduct union business. Instead, she stated that she and other employee board committee members went from classroom to classroom during the day to pass out a survey about McKeever. (Pl. Dep. 106-07.) On November 17, 2015, Plaintiff

3

appeared at a school board meeting where she attempted to read the contents of her September 2015 letter. (Pl. Statement of Facts ¶ 23.) Plaintiff was directed to stop speaking by the Superintendent, and the deputy superintendent was directed to meet with Plaintiff about what was viewed as a "personnel" matter. (Pl. Dep. 120-22.) Plaintiff testified that McKeever subsequently read her letter during a faculty meeting. (Pl. Dep. 132-33.) McKeever testified that she did not read the letter, but talked about a "laundry list" of issues shared with her by the area superintendent, including problems with rumors and proper treatment of colleagues and students. (McKeever Dep. 332, 334-337.) According to Plaintiff, McKeever "went on a forty-five minute tirade and literally hit [her] letter bullet-by-bullet." (Pl Dep. at 133.) Plaintiff felt singled out, especially because everyone in the room knew that she had written a letter. (Pl. Dep. 135-37.)

On December 11, 2015, Plaintiff filed a internal complaint alleging harassment, retaliation and age discrimination. The complaint addressed Plaintiff's belief that she was being retaliated against because of her union activities.[2] (EEO Complaint, DE 32-1.)]

In January of 2016, Plaintiff joined in a grievance with other teachers, stating McKeever acted in a negative and unprofessional manner. The grievance was filed under the "discrimination and harassment" provision of the classroom teacher's association agreement. (Grievance Report, DE 73-7.) Attached to the grievance were several letters from other teachers

---

[2] Plaintiff has submitted a cover letter from the Palm Beach County Office of Equal Opportunity dated January 29, 2016, which stated that it was in receipt of a charge of discrimination dated November 13, 2015. The letter stated that the allegations did not contain any facts or circumstances which, if proven, would constitute a violation of the county's equal employment ordinance. (Jan. 29, 2016 letter, DE 75-2.) Plaintiff did not include the charge of discrimination in the record.

complaining about McKeever's performance at the faculty meeting. (Teacher letters, DE 75-3.) Although the grievance was denied, the portion of the grievance that sought a school "climate survey" was granted. (Pl. Dep. 228.)

On May 18, 2016, the School Board notified Plaintiff, via letter, that an administrative personnel investigation was nearly completed regarding her interaction with a student on April 30, 2016. The letter informed Plaintiff of her opportunity to respond and participate in a meeting with her union representative. (May 18, 2016 letter, DE 73-8.)

On May 27, 2016, Plaintiff filed a complaint against PBCS with the United States Equal Employment Opportunity Commission ("EEOC") alleging retaliation and race discrimination. The complaint alleged that Plaintiff was the recipient of retaliation and had been harassed for "speaking up" for herself and other teachers and students. (May 26, 2016 Charge, DE 32-2.)

On June 2, 2016, Plaintiff was issued a verbal reprimand for inappropriate conduct with a student; i.e., engaging in a verbal confrontation with a student. (June 2, 2016 letter, DE 73-9.) According to Plaintiff, the Florida Department of Education had been informed that there was an investigation against her, but her teaching certificate had not been affected. (Pl. Dep. 192-93.)

During the 2014-2015 school year, McKeever instituted informal administrative walk-throughs or "cruise-throughs" which, according to Defendants, were designed to address faculty concerns about not having enough administrative support in the classroom. (Michael Huggins Decl. ¶ 21, DE 73-10; David Cohen ¶ 19, DE 73-11.) An administrator was required to "cruise-through" at least five classrooms per day in order to be more visible to both teachers and students. (Rosalind McCray Decl. ¶ 13, DE 73-12.) The "cruise-throughs" were informal, brief encounters and were not meant for any formal evaluative purpose. (Huggins Decl. ¶¶ 23-24.)

5

McCray, an assistant principal, testified that she was not aware of any complaints of discrimination or harassment by Plaintiff, and she was not directed by McKeever, or anyone else, to visit Plaintiff's classroom more frequently than other teachers. (McCray Decl. ¶¶ 19-21.)

Plaintiff testified that during the "cruise-throughs," an administrator would walk in, look around to see what the students were doing, and then walk "right back out." (Pl. Dep. 148.) Plaintiff found this intimidating, based on the frequency of it occurring every other day. (Pl. Dep. 149.) The administrator who conducted these cruise-throughs documented that she came into Plaintiff's classroom 32 times that school year. (PBLHS Cruise Throughs, DE 73-12.)

In moving for summary judgment on the retaliatory hostile work environment claims against McKeever under § 1981, Defendants contend that Plaintiff cannot prove that the alleged harassment was based upon protected activity because the protected activity occurred after the allegedly harassing conduct. Additionally, Defendants assert the conduct was not sufficiently severe or pervasive. With respect to the Title VII and FCRA retaliation claims against the School Board, none of the alleged improper conduct involved discrimination prohibited by these statutes. Defendants also argue that the First Amendment claim against McKeever fails because Plaintiff spoke as an employee and the main thrust of her speech was not public.

Plaintiff responds that the evidence shows a genuine issue of material fact regarding a retaliatory work environment. With respect to the retaliatory hostile work environment and retaliation claims, Plaintiff states that summary judgment is inappropriate "because of the totality of circumstances to which Plaintiff was subjected" and Plaintiff suffered adverse job actions as a result of her protected activity. Plaintiff also argues she was denied her right to speech and retaliated against because of her speech.

6

II. Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477

U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III. Discussion

A. Section 1981 retaliatory hostile work environment claim against McKeever

In moving for summary judgment on the section 1981 retaliatory hostile work environment claim,[3] "[t]he relevant question is whether a reasonable jury could find that the defendant subjected the plaintiff to a hostile work environment in retaliation for protected activity." Reed v. United Parcel Svc, Inc., 615 F. App'x 598, 607 n.5 (11th Cir. 2015) (citing Gowski v. Peake, 682 F.3d 1299, 1311-12 (11th Cir. 2012)). "To establish that claim, a plaintiff must show that: (1) [s]he engaged in a statutorily protected activity; (2) [s]he has been subject to unwelcome harassment; (3) the harassment was based on h[er] engaging in the protected activity; and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of h[er] employment." Kelly v. Dun & Bradstreet, Inc., 641 F. App'x 922, 923 (11th Cir. 2016) (citing Gowski, 682 F.3d at 1311)). "Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." Trask v. Secretary, Department of Veteran's Affairs, 822 F.3d 1179, 1194 (11th Cir. 2016). "The ultimate burden of proving by a preponderance of the evidence

---

[3] The same analytical framework applies to both section 1981 and Title VII claims. Bryant v. Jones, 575 F.3d 1281, 1301 n.24 (11th Cir. 2009).

that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff." Id.

According to Defendants, Plaintiff did not engage in statutorily protected activity until December 11, 2015 when she filed a complaint with the School District's Equal Employment Opportunity Coordinator. (Mot. at 4-5.) The allegedly harassing conduct that occurred after this date includes an increase in classroom visits and the "write-up" in May of 2016. Neither of these two incidents constitute harassment that is severe and pervasive. In making this determination, the court "looks at the totality of the circumstances and considers, among other things: '(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.'" Gowski, 682 F.3d at 1312.

Although Plaintiff testified that she found the classroom visits "intimidating," she also testified that the administrator would just simply walk in, look around and then walk back out. (Pl. Dep. 148-49.) This hardly constitutes severe and pervasive conduct. Instead, the classroom visits were nothing more than an "ordinary interaction[] in the workplace." See, e.g., Palmer v. McDonald, 624 F. App'x 699, 704 (11th Cir. 2015); see also McCoy v. Macon Water Auth., 966 F. Supp. 1209, 1221 (M.D. Ga. 1997) ("It is not harassment for supervisors to monitor the performance of their employees"). Indeed, the Eleventh Circuit has rejected a hostile work environment claim with conduct more severe than classroom visits of all teachers. Palmer, 624 F. App'x at 704 (affirming dismissal of hostile work environment claim when the plaintiff alleged his supervisor hastily gave verbal instructions, yelled, implied he was incompetent, laughed by his cubicle, and did not help him first thing in the morning). With respect to the

9

write-up, the Court notes that, by its very nature, a single disciplinary investigation does not constitute severe and pervasive conduct.[4]

At the end of the day, a hostile work environment claim "centers on discriminatory intimidation, ridicule, and insult." See McCann v. Tillman, 526 F.3d 1370, 1379 (11th Cir. 2008) (differentiating hostile work environment claims from claims involving patterns of discrimination which constitute "discrete acts that must be challenged as separate statutory discrimination and retaliation claims") (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002)). And the evidence does not show this. Indeed, "[i]n a race-based case, harassing statements and conduct must be of a racial nature before they can be considered in determining whether the severe or pervasive requirement is met." Laosebikan v. Coca-Cola, Co., 167 F. App'x 758, 765 (11th Cir. 2006).

Furthermore, Defendants have demonstrated a legitimate, non-retaliatory reason for the classroom visits. The evidence shows that McCray, a new assistant principal at Plaintiff's school as of January 2016, performed the classroom visits. McCray testified that she was not aware of any complaints of discrimination or harassment by Plaintiff and she was not directed by McKeever, or anyone else, to visit Plaintiff's classroom more frequently than other teachers. (McCray Decl. ¶¶ 19-21.) Indeed, the classroom visits were implemented school-wide and required an administrator to visit five classrooms every day. (McCray Decl. ¶ 13.)

In response, Plaintiff relies on McKeever's testimony, stating that McKeever "initiated

---

[4] Quizzically, Plaintiff relies upon a dissent in a Fourth Circuit case that addresses adverse actions to argue against the granting of summary judgment on the retaliatory hostile work environment claim. See Resp. at 14 (citing Givens v. O'Quinn, 121 F. App'x 984, 998 (4th Cir. 2005) (Gregory, J. dissenting)).

10

harassing and intimidating behavior by increasing walk-throughs" in Plaintiff's classrooms. (Resp. at 12.) The citations provided by Plaintiff, however, do not support that contention. Instead, McKeever's testimony simply explains the purpose of the walk-throughs. (McKeever Dep. 171-74, 179.) Plaintiff fails to point to any evidence that might show pretext, such as evidence that more classroom visits were conducted of Plaintiff than other teachers.

Next, the Court will examine the write-up of Plaintiff on June 2, 2016 which addressed Plaintiff's verbal confrontation with a student. Significantly, the confrontation occurred on April 30, 2016 and the School Board notified Plaintiff of the investigation on May 18, 2016. Thus, although the write-up occurred on June 2, 2016, the investigation began on May 18, 2016, which is prior to Plaintiff's complaint. Based on this timeline, Plaintiff cannot show causation. See Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) ("when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation"); see also Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1270 (11th Cir. 2010) ("Title VII's anti-retaliation provisions do not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively making a discrimination complaint").

For these reasons, the Court grants summary judgment on Plaintiff's claims for retaliatory hostile work environment against McKeever.[5]

---

[5] In responding to Defendant's arguments, Plaintiff relies on many incidents that occurred prior to December 11, 2015 and/or incidents that do not involve allegations of discrimination or retaliation in a manner prohibited by Section 1981. Indeed, Plaintiff's response frequently conflates discrimination based on protected categories with discrimination related to her union activities. With respect to the November 13, 2015 letter from the Palm Beach County Office of

11

B. Title VII/FCRA retaliatory hostile work environment claims against the School Board

Next, the Court examines the retaliation claims against the School Board. To establish a prima facie case of retaliation, a plaintiff is required to show that she engaged in statutorily protected expression, suffered an adverse employment action and a causal relationship between the two. Trask v. Sec'y, Dep't of Veteran's Affairs, 822 F.3d 1179, 1193-94 (11th Cir. 2016); McCann v. Tillman, 526 F.3d 1370, 1375 (11th Cir. 2008).

To the extent Plaintiff alleges that the classroom visits and the May 2016 write-up constitute retaliation, the Court relies upon the previous discussion to show that Defendants have shown a legitimate, non-retaliatory reason for the classroom visits which Plaintiff has not shown to be pretextual. What remains is the transfer of Plaintiff to PBLHS. That transfer, however, occurred prior to the May 2016 complaint and therefore cannot constitute retaliation. For these reasons, summary judgment is granted on the retaliation claims against the School Board.

C. First Amendment Claim against McKeever

The Court now addresses Plaintiff's First Amendment claim. Defendants move for summary judgment on Plaintiff's First Amendment claim on the basis that she spoke as an employee, not as a citizen on a matter of public concern. Thus, the main thrust of her speech was not public. (Mot. at 12.) See Carollo v. Boria, 833 F.3d 1322, 1329 (11th Cir. 2016) (the first inquiry requires determining whether the employee spoke as a citizen on a matter of public concern). "[I]f the employee spoke as an employee and on matters of personal interest, the First Amendment is not implicated." Alves v. Board of Regents of the Univ. Sys. of Georgia, 804

---

Equal Opportunity, the Court is unable to ascertain its significance given that Plaintiff has not supplied the Court with the underlying complaint. Therefore, the Court does not know what Plaintiff alleged or whether Defendants were aware of the complaint.

F.3d 1149, 1160 (11th Cir. 2015). "[T[he line between speaking as a citizen or as a public employee turns on whether the speech 'owes its existence to a public employee's professional responsibilities.'" Carollo, 833 F.3d at 1329 (quoting Garcetti v. Ceballos, 547 U.S. 410 (2006)). Whether a public employee spoke as a citizen on a matter of public concern is a question of law. Alves, 804 F.3d at 1159.

The September 8, 2015 letter to the School Board and Superintendent criticized McKeever's leadership and provided a list of concerns that needed to be addressed. It was this letter that Plaintiff attempted to read at the November 17, 2015 school board meeting.[6] The letter reads simply as a personnel grievance of Plaintiff and does not raise issues of public concern. See Myles v. Richmond County Bd. of Educ., 267 F. App'x 898, 900 (11th Cir. 2008) ("Though her speech did touch on a matter of public interest, the true purpose behind [the] [a]ppellant's various complaints was not to raise an issue of public concern, but rather to further her own private interest in improving her employment position").

Even if the Court was to assume the letter sought to address the welfare of teachers and students (which suggestion the Court rejects), Plaintiff was clearly speaking as an employee, not as a citizen. See Alves, 804 F.3d at 1163–65 (clinical psychologists and staff at university counseling and testing center who wrote memo to university officials detailing supervisor's mismanagement were speaking as employees because each complaint in the memo was made in furtherance of their ability to fulfill their duties with the goal of correcting the supervisor's alleged mismanagement, which interfered with employees' ability to perform); Keller v. City of

---

[6] To the extent Plaintiff claims a violation of the First Amendment because she was not allowed to speak at the meeting, there is no evidence that McKeever stopped her from speaking at that meeting.

13

Tallahassee, 181 F. Supp. 3d 934, 954 (N.D. Fla. 2015) ("implicit in the duty to perform one's job is the duty to inform those that would appear to have the most need to know and best opportunity to investigate and correct the barriers to the performance of that job") (internal quotation marks, brackets and ellipses omitted).

Thus, the Court finds, as a matter of law, that the speech was not directed to matters of public concern. As noted above, the content of the speech addressed matters of interest to Plaintiff. See Alves, 804 F.3d at 1162 (this requirement asks "whether the employee spoke on a matter of public concern or on matters of only personal interest"); Myles, 267 F. App'x at 900 (no issue of public concern when "he true purpose behind [the] various complaints was not to raise an issue of public concern, but rather to further her own private interest in improving her employment position"); see also Ferrara v. Mills, 781 F.2d 1508, 1516 (11th Cir. 1986) ("a public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run"); Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993) (even though the plaintiff spoke of co-workers plight, "the main thrust of speech" took the form of a private employee grievance).

Overwhelmingly, the letter complains about McKeever as a supervisor and listed concerns that primarily concerned the teachers in the school, not the public. See Alves, 804 F. 3d at 1166 (speech that focuses on the poor leadership, management and conduct of supervisor is not public speech); Sherrod v. Board of St. Lucie County, 635 F. App'x 667, 672 (11th Cir. 2015) (a teacher who complained about a supervisor did not engage in protected speech even if "one of [the plaintiff's] many criticisms [ ] happened to touch on a topic of potential public concern"); Williams v. Gwinnett County Public Schools, 425 F. App'x 787, 790 (11th Cir. 2011) (teacher

14

did not raise issue of public concern when speech consisted of disdain for dogs in the workplace and comment that students and staff might have similar allergies); Maples v. Martin, 858 F.2d 1546, 1552 (11th Cir. 1988) ("courts have found speech that concerns internal administration of the educational system and personal grievances will not receive constitutional protection").

Because the First Amendment claim fails as a matter of law, McKeever is entitled to qualified immunity. See Bowden v. Stokely, 576 F. App'x 951, 954 (11th Cir. 2014) (to defeat qualified immunity, a plaintiff must show that a constitutional violation occurred). As such, summary judgment is granted to McKeever on the First Amendment claim.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Amended Motion for Summary Judgment (DE 72) is **GRANTED**. The Court will separately enter Judgment for Defendants.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of October, 2017.

KENNETH A. MARRA
United States District Judge