IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil No. 9:16-cv-81624-MARRA/MATTHEWMAN

RAQUEL ABRAMS-JACKSON,
       Plaintiff,

      v.                               Case Closed October 19, 2017
                                          On Appeal November 20, 2017
ROBERT AVOSSA, et al.,
       Defendants.
_____/
                 Civil No. 9:16-cv-81612-MARRA/MATTHEWMAN

MALIK LEIGH, ESQ.
       Plaintiff,

      v.

ROBERT AVOSSA, et al.;
       Defendants.
_____/

### PLAINTIFF'S SPECIFIC MOTION TO STAY PENDING APPEAL AND ACCOMPANYING MOTION TO RECUSE PURSUANT TO 28 U.S.C. § 144, AND 28 U.S. CODE § 455(a-b)(1)

COMES NOW, the Plaintiff, RAQUEL ABRAMS-JACKSON by and through her undersigned Counsel(s) respectfully files this, her Motion to Stay Pending Appeal, pursuant to Rule 8 of the Federal Rules of Appellate Procedure, respectfully requesting this Court stay pending appeal to the 11th Circuit court of Appeals for the United States, its October 19, 2017, Final Judgement, [D.E. 96, 98] and all subsequent awards for Sanctions, Fees, and Costs granted [D.E. 54, 83, 93] and for the current Judges to recuse themselves for prejudice and bias, as grounds submit the following facts and evidence:

### MOTION TO STAY PENDING APPEAL PURSUANT TO F.R.C.P. RULE 8

On or about October 19, 2017, this Court granted Summary Judgement to the Defendants.  On or about November 20, 2017, the Plaintiff, RAQUEL ABRAMS-JACKSON, and her Counsel filed in the the Southern District Court of Florida an Appeal of the Final Judgement from October 19, 2017 in the Eleventh Circuit Court of Appeals. (**Ex. B - Notice of Appeal**). Pursuant to Rule 8 of the Federal Rules of Appellate Procedure due to their overly oppressive

and personal nature and as stated previously, [9:16-cv-81624 D.E. 54, 77, 98 and in 9:16-cv-81612 D.E. 58, 73, 74, 87, 89] because they are violative of 28 U.S.C. §455.

At issue is the repeated sanctioning of the Plaintiff and one of the Plaintiff's Counsel as a result of an extremely over-broad, and repeatedly incorrect characterization of Defendant-selected filings and social media postings. Additionally, the bias that resulted from this accidental or purposeful mischaracterization led this Court to not only favor and provide protection and/or cover for the Defendants and Defendants' Counsel, but resulted in the repeated awarding of punitive sanctions personally against one of Plaintiffs' Counsel, often when all Plaintiff's were following this Court's Orders, the Local Court Rules, and the Federal Rules of Civil Procedure.

The Plaintiff's have filed an Appeal in the United States Eleventh Circuit Court of Appeals regarding Case No.: 9:16-cv-81624 for prejudicial awarding of sanctions, bias and prejudice towards counsel leading to manifest error, and violation of 28 U.S.C. §455.

This Court, which by nature of its consolidated hearing on June 5, 2017 with the Rosenberg/Hopkins Court, Case No.: 9:16-cv-81623, [D.E. 54].

<u>ORDER OF PROTECTION FOR DEPOSITION OF MARCIA ANDREWS</u>

Initially, this Court was slated to hear testimony regarding the Plaintiffs' (all three cases) need to depose Defendant Marcia Andrews, School Board Member, for her involvement in the transfer and retaliation towards Plaintiff Raquel Abrams-Jackson, and her knowledge of the Defendants' history and tradition of racial inequality among and towards minority teachers as all of the Plaintiffs are Minority Teachers, and because that is a Count we have to prove. [Hearing Tr. 11:8-25, 9:1-4, 13:18-25, 14-15:1-12, June 5, 2017]. Additionally, Defendant Andrews was personally involved in the meeting and administrative transfer of Plaintiff Abrams-Jackson. This specific point was communicated to the Court [Hearing **Tr.** 15-16:1-16, June 5, 2017].  However, in its companion Order, Judge Matthweman stated:

> "In further support of those to Orders, the Court notes first that Mr. Leigh
> wrote in a social media post that the Defendants were trying hard not to let the
> Plaintiffs depose Ms. Andrews, a member of the Palm Beach County School

*Board, and that he wanted to depose her <u>solely</u> regarding her affidavit detailing how the district retaliates against people."*

In Judge Matthewman's Order, there is no other mention of what Attorney Malik Leigh's reasons for needing to depose Defendant Andrews. This omission was a misrepresentation of what Mr. Leigh testified to, and further, in his Motion to Alter or Amend, Attorney Leigh, without the availability of the June 5, 2017 hearing transcript, reminded the Court of the specific reasons why he wanted to Depose Ms. Andrews.  This Court, in denying the Plaintiffs' witness, set in motion the impediment that the Defendants desired all along; the inability for all Plaintiffs to present their case; to prove the existence of racial biases towards teachers and employees of colour, specifically, Black teachers, that exist in the Defendant School District; and to permanently bias the tribunal. This effort was to thwart the Plaintiffs' §1983 actions.   Judge Matthwman *9:16-cv-81624* [D.E. 54] stated: *"In light of the scant relevance proffered by the Plaintiffs for attempting to take Ms. Andrews' deposition, the staleness of her proffered testimony, and her recent affidavit attesting that she has no knowledge of the matters at issue in the two lawsuits (his cases - 9:16-cv-81624 and 81612), the social media posts tend to prove that her deposition was being taken primarily for he purpose of harassment and inconvenience."*   Further, Judge Matthewman stated: *"The Court will not allow Ms. Andrews to become a pawn in this litigation. In light of Mr. Leigh's posts, the Court finds that Ms. Andrews' deposition was primarily to harass her and the Defendants."*

 Defendants always want to prevent key witnesses from being deposed, however, the Court centered its rage against a single Plaintiff/counsel as the reason for wanting to depose Defendant Andrews (who is a Defendant as a member of the Board). Not only did Ms. Andrews in her affidavit say she knew Ms. Abrams-Jackson, but in their depositions, Defendants, Darron Davis, Robert Avossa, Cheryl McKeever, and Plaintiff Raquel Abrams-Jackson all stated that Ms. Andrews met with Ms. Abrams-Jackson. The purpose of deposing Ms. Andrews was about that contact that led to the forced transfer and issues between the Plaintiff and

Defendant McKeever. However, the Court prejudiciously imputed nefarious intent upon Plaintiff's Counsel.

The Court determined that Attorney Leigh violated Rule 26.1(h) regarding scheduling of its depositions within the 14 day time frame. However, the Court completely disregarded the initial requests, weeks of conferral, negotiating, the Defendants' presenting a deposition date and time, scheduling, noticing, and re-noticing with a change of address for all depositions to convenience the Defendants. [D.E. 37 attachment notices and email conferral thread]. The Court, however ruled otherwise in 9:16-cv-81624 [D.E. 54, P 5-6]. The actions that Plaintiff's Counsel took were to100% compliant with Local Rule 26.1(h) which states:

> *(h) Reasonable Notice of Taking Depositions. <u>Unless otherwise stipulated by all</u>* *<u>interested parties</u>, pursuant to Federal Rule of Civil Procedure 29, and excepting the circumstances governed by Federal Rule of Civil Procedure 30(a), a party desiring to take the deposition within the State of Florida of any person upon oral examination shall give at least seven (7) days' notice in writing to every other party to the action and to the deponent (if the deposition is not of a party) . . ."*

F.R.C.P. 30(a) states:

(a) When a Deposition May Be Taken.

(1) Without Leave. A party may, by oral questions, depose any person, including a party, without leave of court <u>except as provided in Rule 30(a)(2)</u>. The deponent's attendance may be compelled by subpoena under Rule 45.

**(2) With Leave. A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2):**

**<u>(A) if the parties have not stipulated to the deposition</u>** and:

(i) the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants;

(ii) the deponent has already been deposed in the case; or

(iii) the party seeks to take the deposition before the time specified in Rule 26(d), unless the party certifies in the notice, with supporting facts, that the deponent is expected to leave the United States and be unavailable for examination in this country after that time; or

(B) if the deponent is confined in prison.

Evidence of the communication was provided the Court in the Plaintiff's responsive pleading to the Plaintiff's Motion for Protective Order 9:16-CV-81624 D.E. 37] and referred to in

the Plaintiff's Motions to Alter or Amend 9:16-cv-81624 [D.E. 58]. The Court in 9:16-cv-81624 [D.E. 54] not only ignored the evidentiary documents presented in [D.E. 37], but additionally made the comment in claiming that counsel was violative of the Local Rule 9:16-cv-81624 [D.E. 54 pages 5-6]:

*"The Court Struck the Plaintiff's Notices of Deposition which scheduled Marcia Andrews' deposition for May 31, 2017, as the Notices of Deposition were violative of Local Rule 26.1(h). in that the Plaintiff did not provide sufficient advanced notice prior to the scheduled deposition. The Court found that Plaintiffs in both cases violated the local rules of this Court in noticing the deposition of Ms. Andrews on May 25, 2017, for  deposition to b help on May 31, 2017.  <u>The Court also requires the parties to confer in good faith and try to reach an agreement about whether or not Marcia Andrews should be required to appear for her position at all. Id.</u>"*

The Court chastised Plaintiff's Counsel for something he did not do and provided evidence that he didn't, but did not demand this rule required by F.R.C.P. Rule 26(c) which states:

1.   Rule 26(c) :

*"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . .The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.*

Defendants' Motion for Protective Order [D.E. 36] contained no Certificate of Good Faith, however, in [D.E. 74], the Court, mentioned it as an objection from the Plaintiffs, but failed to address it at all. The Court chose, instead, to double-down on chastising and punishing Attorney Leigh for issues that were in fact proven to be false or manufactured from the Defendants, and/ or the Court.  Many of these issues were not even argued by the Defendants in the June 5, 2017 hearing, or any prior or subsequent filings. They do not appear on the transcript of the hearing.

<u>SOCIAL MEDIA POSTS</u>

Regarding Plaintiff's Social Media posts, the Court repeatedly attempted to draw a connection between the word usage from Attorney Leigh, and the claims proffered by the Defendants.  The Court stated: *"<u>Many</u> of the Social Media posts in question are related to this*

*litigation. A few of the posts, although not directly related to this litigation, have violent or morbid themes that provide context to certain other litigation-relate posts which raised legitimate safety concerns in this litigation."* 9:16-cv-81624 [D.E. 54, page 6]. The Court then went on to list totally unrelated social media posts made by Plaintiff's Counsel on his own free time, using his own imaginative creative process, and exercising his First Amendment Right to post in a private or public forum as he saw fit without any threat of content based restriction.

The fact that the Court used social media posts that either the Defendants or the Court found objectionable goes to the greatness of the First Amendment of the United States Constitution.  The legal Social Media posts used by the Court to justify its rationale that the much maligned social media post regarding the Plaintiff wanting to take pictures; a still legal enterprise in the United States, was somehow a "veiled threat" 9:16-cv-81624 [D.E. 54, p. 5] bare evidence of extreme personal bias in violation of 28 U.S. Code § 455(a-b)(1):

(a) Any judge, justice, or magistrate judge of the United States shall disqualify himself (herself) in any proceeding in which his impartiality might reasonably be questioned.
(b) (S)he shall also disqualify himself (herself) in the following circumstances:
    (1) Where he has a <u>personal bias or prejudice concerning a party,</u> or personal knowledge of disputed evidentiary facts concerning the proceeding. . .

During this Court's Consolidated hearing on or about June 5, 2017, this Court heard testimony from all Counsel regarding the Social Media post at issue that was claimed to have the possibility to be about a firearm, and purported to be threatening <u>and</u> about the Defendants. Defendant's Counsel, when the Court asked about whether the purported investigation was substantiated or the status of said investigation, the Defendants' Counsel Bernard stated:

"*Well, they've looked into it and they haven't been able to confirm anything. Their position, however, <u>is in an abundance of caution,</u> which is why we've requested in our motion, that any deposition going forward be in a secure facility. "*   [June 5, 2017, Hearing Tran. 17:16-24].

The Court, however stated specifically, and repeatedly claims that Attorney Leigh threatened the Defendants with physical violence; which is a misdemeanor or possibly a felony. In the instance where the Defendants themselves, with the assistance of an unknown law enforcement official, who was not present at any hearing, gave no testimony, presented no affidavits nor anything, this unknown person stated that their investigation was "inconclusive." The Defendants could not determine whether Attorney Leigh was threatening them, therefore, the interruption during the deposition was also uncalled for. The expense of paying for an inconclusive, Defendant-requested officer in the parties depositions was not due to any overt threat by Plaintiff's Counsel, but unreasonably by the Defendants; which was initially raised by the Plaintiffs in 9:16-cv-81624 [D.E. 42]. Despite this, the Court stated: *"Mr. Leigh either would not or could not acknowledge that referring to a "shooting campaign" and upcoming depositions of public employees in the same sentence, in this day and age of excessive school violence would reasonably be expected to cause fear to those involved in this litigation." Id* at [D.E. 54 p.].

Attorney Leigh never stated who his depositions were with in his social media posts. The Court, however, repeatedly tries to insert these words onto the mouth of Plaintiff's Counsel Leigh. [June 5, 2017, Hearing Tran. 38:20-25]


Judge Hopkins: *"The risk of members of the public reading this reasonably as saying that you would love to start a shooting campaign after taking depos, the next round of depos in the case, and that meaning you would like to engage in a firearm shooting campaign, do you understand the risk of that?"*

Counsel repeatedly stated no.

[June 5, 2017, Hearing Tran. 40:5-15]

Judge Hopkins: *"No ifs. Do you understand if or not?"*

Mr. Leigh: *"No, I don't your Honor, as a person that has taken pictures for about 20-something years, if you were to go - -"*

Judge Hopkins: *"But there's no references to picture taking there."*

Mr. Leigh: *"I understand that. But it's my - - you know, obviously, i guess it depends on intent. And so you're asking the person - -*

Judge Hopkins: *"No, Im not asking about intent. Im talking about the reaction of the public.*

Mr. Leigh: *"If a person were to read that and they immediately thought 50 percent it could either be guns or it could be something else, I'm going to think guns (?) - - I cant answer that. I don't know.*

However, in his Order for this Case 9:16-cv-81623 [D.E. 54], Judge Hopkins's recollection of this exchange was:

> *Mr. Leigh insisted that such was a reference to his photography hobby, and he rejected the notion that such a post could reasonably be construed as threatening a shooting campaign with a firearm. However, Mr. Leigh conceded that nothing in the post referenced picture-taking."*

Attorney Leigh clearly did not say that, and the Court, in its order, also hoping to submit to the Florida Bar and Ad Hoc Committee, seemingly wants(ed) to convey that they want Attorney Leigh sanctioned, or suspended at all cost. To misconstrue testimony shows extreme bias and prejudice towards Counsel.

The Court claimed that Attorney Leigh referred to Defendant Avossa as "a" MFing Superintendent when the Social media post says "THE" MFing Superintendent. It Doesn't name the Superintendent. Clarified in testimony on [June 5, 2017, Hearing Tran. 26-31] However, the Court saw, and read "the MFing" and replaced it themselves so to make Counsel call the Defendant a disparaging term.  More specifically, the Court refused to accept Plaintiff's Counsel's first amendment right to speak using curse words in his everyday and personal life while he is not in the practice of law, not in the presence of opposing Counsel, or the Court. The Court, however, seems to be of the opinion that no attorney, whether in their private life speaking about non-law related issues, or even law related issues, may use expletives or curse

words; for if they speak on any legal topics or even on their own lives as attorneys, and use an expletive, that they are using these words <u>while</u> practicing law.

Attorney Leigh has admitted to those very few instances that the Defendants selected to present to the Court which were possibly in violation of the Florida Bar Ethics Rules (Using the word "Lying" or "Liar" in reference to a defendant in an open case). However, <u>MOST</u> others, even when referencing the Defendants or the many cases, Attorney Leigh was exercising his freedom of speech, during his free time, and using social media as a form of entertainment and/or communication to specific others.

The Court seemingly appears to take issue with an attorney using profanity in any instance, which their personal loathing of curse words creates a bias towards those Attorneys who do or have shown to have done so.  This personal bias, and the Courts desire to change the words, their usage, and their intent, is violative of *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868 (2009)28 U.S. Code § 455(a-b)(1), and the Code of Conduct for United States Judges Canon 3.


<u>Additional instances of Prejudice or Bias by this Court(s)</u>
<u>9:16-cv-81624 [D.E. 54] / 9:16-cv-81612 [D.E. 58]:</u>

Judge Matthewman in [D.E. 54, p.17] referred to Attorney Leigh as a "Member of the Bar and a former "<u>self-described</u>" Law Teacher.   Attorney Leigh is a Florida Certified Social Sciences Teacher (Law).  The District (Defendants), students, and Florida Department of Education refer to him as a "Law Teacher."


Judge Matthewman in [D.E. 54 p.19] "In further support of this two Orders, the Court notes first that Mr. Leigh wrote in a social media post that the Defendants were trying to not let the Plaintiffs depose Ms. Andrews, a member of the Palm Beach County School board, and that he wanted to depose her solely regarding her affidavit detailing how the district retaliate against people."   No such such Social Media post exists.


Judge Matthewman in [D.E. 54 p.19] "Further, the Court nots that the content and tone of Mr. Leigh's posts make it seem as if he is treating these cases, at least in part, as a game an that he wants to inconvenience and embarrass the Defendants and witnesses, such as Ms. Andrews, to the greatest extent possible.  In light of the scant relevance proffered by Plaintiffs for attempting to take Ms. Andrews' deposition, the staleness of her proffered testimony, and

Case 9:16-cv-81624-KAM   Document 104   Entered on FLSD Docket 12/06/2017   Page 10 of 17

her recent affidavit attesting that she has no knowledge of the matters at issue in these two lawsuits, <u>the social media posts tend to prove that her deposition was being taken **primarily** for the purposes of harassment and inconvenience.</u>"

This Court passively, or purposefully ignored, or in its desire to punish Attorney Leigh as great as they could, ignored the proffered Affidavit from Marcia Andrews that Ms. Andrews personally met with the Plaintiff in 2014, the year Plaintiff Abrams-Jackson was transferred to Palm Beach Lakes High School. This meeting, as noted in [D.E. 37] was the reason for requesting the Deposition. Also in [D.E. 37], the Defendants agreed to the deposing of Ms. Andrews. The Deposition of Darron Davis confirmed Ms. Andrews' involvement. The Deposition of Robert Avossa confirmed that Ms. Andrews was not presented with the paperwork to terminate Malik Leigh from his position as a "Florida Certified Law Teacher for Palm Beach County, Florida," that she did have knowledge of the parties in both of Judge Matthewman's cases, and that the desire to depose her was not to harass her, but to ask linear questions about her personal knowledge of happenings from the instant cases.

This Court in its desire to punish Attorney Leigh, retaliated against both Plaintiffs so to deny them their burden to prove their cases.

Last, the Plaintiff's social media post about "<u>making of a murder</u>," which is the name of a documentary film on Netflix, about the legal defense of a man convicted of murder, lends to the Courts ignorance of popular culture, and punishing of those that are not ignorant of popular culture.

The Court in [D.E. 54, p.20]: *"Mr. Leigh's post-motion comment about "Making a Murder" in relation to the Defendants in these two cases, after all of the problems and fear his previous social media posts have caused in these two cases, is simply irresponsible. Using the word "murder" in relation to these cases, after the Defendants had raised legitimate safety concerns about his prior posts, showed extremely poor judgement at best and constitute a <u>veiled threat or reference to future violence at worst.</u>"*

Not only did the post reference the film crew and provided all of the context necessary to easily denote that it was referring to the documentary series, the Court simply sought to

penalize or reach for any related opportunity to sanction Plaintiff's Counsel unnecessarily; again because of its personal bias and desire to punish Attorney Leigh.

During the June 5th Consolidated Hearing, this Court proposed that the safety order, though admitted to be inconclusive by the Defendants, would be for the benefit, safety, and sake of completion for all parties. [June 5, 2017, Hearing Tran. 53:1-12, 56:17-25, 57-60:6-11]. However, in [D.E. 54], this Court change course, made claims that Counsel did not make, and denied the existence of available and filed evidentiary materials and affidavits that bolster the Plaintiff's positions.

Also in 9:16-cv-81623 [D.E.54] the Court stated: "*This Court is also mindful that Mr. Leigh's posts regarding this case (as set forth above) should not be viewed in isolation. Rather, it is important to view them in the context of his other social media posts, which are disturbing. From the small sampling provided to this Court as exhibits to Defendants' motion, it is evident that Mr. Leigh harbors extreme hostility and resentment against those with whom he disagrees and those he believes have mistreated him.*

Also in 9:16-cv-81623 [D.E. 54] the Court stated: "*Finally, this Court does not credit Mr. Leigh's self-serving statement that his post about a "shooting campaign" was intended as a benign reference to photography. Rather, this Court finds that the post was intentionally ambiguous so as to instill fear in the Defendants and their attorney, while providing Mr. Leigh with a purportedly innocent explanation."*

Also in 9:16-cv-81623 [D.E.54] the Court stated: "*The totality of these posts suggests that Mr. Leigh is a troubled man whose abhorrent contributions on social media display a reckless disregard for any consequences. Particularly given the current socio-political climate, where instances of terrorism, school shootings, and workplace violence are far too common, responsible use of social media is essential, and should certainly be expected from an officer of the court."*

The Court in this ruling, and rulings thereafter, utilized its subjective personal opinion and not legal opinion, drawing a totally unrelated and false equivalence while completely disregarding the truth presented, along with supporting evidence.  It is clear that upon seeing Attorney Leigh's picture in his profile on the photography oriented social media posts, seeing him in person, and succinctly answering the Courts questions, it is apparent that this Court upon

appearance, viewed Attorney Leigh as a stereotypical violent man of colour. It appears that despite evidence to the contrary, Mr. Leigh is a crafty individual that is very subtle with his word choices so to relay threats in a way that won't see him punished.  This line of reasoning is full of racial dog whistles that men of colour have dealt with for decades.  The reasoning used by this Court 9:16-cv-81624 [D.E. 54] is shaped in a way that offers Attorney Leigh no way to either explain himself or defend himself. And in this instance, the Court should recuse itself for extreme bias and prejudice.

The basis of the Plaintiffs' instant cases involves their first amendment rights, and the retaliation and punishment for exercising of these rights.   This Court presiding over both of these cases, is levying sanctions against Plaintiff's Attorney Leigh for exercising his Freedom of Speech. The Court's has shown bias and prejudice against Attorney Leigh for how he speaks, his word usage and choice of words, and has connected them to the Defendants' allegations in their Motions (protective order and for security) in a way that shows extreme bias, prejudice, and possibly racial animus.  Defendants did not file their motions in Good Faith; they didn't even try to, which, if the Court showed the same deference, would have denied it for violating the Local and Federal Court Rules regarding good faith, filing Certificates of Good Faith.

As for the issue of the Mediation Statement, the Court remarked that Attorney Leigh (and none other) needed to stop violating the rules and intimated that he (alone) was habitual in his violation. Up to that point, he hadn't violated any local court rules, so to castigate him as such was another exercise in bias and prejudice.  It is arguable that filing the mediation statement to prove bad faith in the way that the Plaintiff's did, was a violation.  The Court, in its ruling, stated that Attorney Leigh Violated Local Rule 16.2(g)(2). However, as the rule states, case law establishes, and the Florida Statute §44.405 remarks, no information regarding a mediation may be put into evidence, made known, or reported. It is Counsel's position that mediation did not take place, therefore, none of those rules should apply.  This is one of the basis of the Appeal

filed in the Eleventh Circuit Court of Appeals; and it is an important one in light of the almost nonexistent case law on this unique subject.  The case law that the Court presented in its Order [D.E. 74] is unrelated to the issue.   And in its ruling, it speaks of prior misconduct, where Plaintiff's Counsel did not violate any.  Relying on Judge Hopkins's Caselaw:

*Florida Bar vs. Norkin,* 132 So.3d 77 (Fla. 2013), the Defendant directly sent threatening emails to opposing counsel stating the other attorneys had "lived to regret their incompetent, unethical, and improper litigation practices. This was communicated directly to opposing Counsel. There was no ambiguity.

*Florida Bar vs. Sayler,* 721 So.2d 1152 (Fla. 1998), an attorney sent a letter directly to opposing counsel referencing recent murders of a similarly situated case with articles and a headline in the mail. This included cutouts of headlines of a dead or murdered person.

*Florida Bar vs. Martocci,* 791 So.2d 1074 (Fla. 2001), an attorney speaking directly to opposing counsel and his client, called them "crazy," "a nutcase," "a stupid idiot," and that they should "go back to Puerto Rico."

In each of these cases, the offending attorney was speaking directly to the opposing counsel, or proactively mailed a letter to opposing counsel. In two of these cases, during an actual law related preceding. Neither opposing counsel nor their clients went searching through their mail for anything that may possibly be related to them. In all of these cases, there was a direct and overt one-to-one communication from the offending attorney to the others.   In the instant case, Opposing Counsel proactively went to Attorney Leigh's personal communications that he had with other known people, searched and found through possible references, then they themselves could not conclusively determine the intent.   However, the Count determined what the Defendants actually did not confirm, or allege directly.

This Court refused to give equal deference to the Plaintiffs because Attorney Leigh is Plaintiffs' Counsel.  And this bias and prejudice by this Court, and tangentially, the Rosenberg/

Hopkins Court (by nature of the consolidation, as both Courts have shared rulings and mischaracterizations), has denied both Plaintiffs in these cases due process of law.

### LAW AND ARGUMENT FOR MOTION TO STAY PENDING APPEAL
### AND MOTION TO RECUSE PURSUANT TO 28 U.S. CODE § 455(a-b)(1)

The Court has expressed extreme bias and prejudice towards Plaintiff's Counsel Leigh in a desire to either punish, or destroy the reputation or career of Counsel.  It was not enough to proffer statements, words, or testimony that Plaintiff's Counsel did not make, but this active prejudice and bias shows(ed) preferential treatment to the Defendants whom took the false characterizations and rode them to the Court's satisfaction.

Pursuant to **28 U.S. Code § 455(a-b)(1)**:

(a) Any judge, justice, or magistrate judge of the United States shall disqualify himself (herself) in any proceeding in which his impartiality might reasonably be questioned.

(b) (S)he shall also disqualify himself (herself) in the following circumstances:

    (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . .

Additionally, the Code of Conduct for United States Judges states:

**Canon 3: A Judge Should Perform the Duties of the Office Fairly, Impartially, and Diligently**

**(C)Disqualification:**

**(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which:**

    **(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.**

Upon the realization that this Court exhibited bias, and exhibited prejudice, it has(d) an obligation to recuse itself from the proceedings and it has not done so. *Id.*

Therefore, pursuant to 28 U.S.C. § 144, with accompanying affidavit, the Plaintiffs specifically request that United States Magistrate Judge William Matthewman, and United States District Court Judge, Kenneth Marra recuse themselves from the remaining case: Leigh

vs. Robert Avossa, et al,:  case no.: 9:16-cv-81612, and remaining rulings in Abrams-Jackson vs. Robert Avossa, et al,: case No. 9:16-cv-81624 currently in appeal with the United States Eleventh Circuit Court of Appeals.

As stated, the Plaintiff is appealing Case No. 9:16-cv-81624. Because of this, and because the reasons for appeal are related to the instant case, there is reason to expect that the Plaintiff, Malik Leigh, Esq., will not receive, as he has not yet, fair and unbiased due process. It is for this reason as well, that pursuant to 28 U.S.C. § 144, that Plaintiff Malik Leigh, request that Magistrate William Matthewman and Judge Kenneth Marra recuse themselves, and their prior sanctions orders be stayed until reviewed for bias and prejudice.

For these reasons, the Plaintiff(s) request that this Court Stay all awards of Attorneys Fees for Sanctions from the Consolidated hearing from June 5, 2017, and the subsequent award for fees resulting from the Motion to Alter or Amend [D.E. 74, 77] and related case 9:16-CV-81612, where in which this Court claimed that Plaintiff's Counsel Leigh, (not the Plaintiff) was seemingly a habitual violator of the Local Court Rules, for which he as that point, had not violated the prior rules claimed.

WHEREFORE, the Plaintiff, Raquel Abrams-Jackson respectfully requests that this Court Stay all Orders for Sanctions, Fees, and Costs towards Plaintiff's Counsel and the Plaintiff during the pendency of the Plaintiff's Appeal, and subsequently recuse themselves pursuant to 28 U.S.C. § 144, 28 U.S. Code § 455(a-b)(1) and deny the Defendants' request for Attorney's Fees and the Court's own award for Attorney's fees.

## CERTIFICATE OF GOOD FAITH CONFERENCE; UNABLE TO CONFER

Pursuant to Local Rule 7.1(a)(3)(B), I hereby certify that counsel for the movant has made reasonable efforts to confer with all parties and non-parties who may be affected by the relief sought in the motion but has been unable to do so.  The reasonable efforts made were specifically as follows: <u>November 9, 2017, Plaintiff's Counsel informed Defendants that they intended to file a Motion to Stay regarding fees and costs.  Aside from the specific issue of</u>

discussion, Defendants' counsel intimated no specific objection to the Plaintiffs' Motion to Stay. Defendants Counsel continued no additional conversation regarding the Plaintiff's Motion to Stay, as the conversation immediately turned negative, Plaintiff's Counsel ceased communication. *It should be assumed that the Defendants would Object in all cases.*

s/Malik Leigh
Attorney Name

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 6, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve copies upon all parties of record.

by: s/Malik Leigh,

Watson Leigh Law and Education
Services Group, Inc.
Malik Leigh, Esq.
Bar No. 89820
Email: malik@WatsonLeigh.com
Danielle R. Watson, Esq.
Bar No. 93155
Email: danielle@WatsonLeigh.com
Service: service@WatsonLeigh.com
PO Box 221172
West Palm Beach, FL 33422
P: 561-508-8555

SERVICE LIST
Raquel Abrams-Jackson., v. Cheryl McKeever, et. al.
Case No. 9:16-cv-81624KAM

Malik Leigh, Esq., v. Robert Avossa, et al.
Case No. 9:16-cv-81612KAM

COUNSEL FOR DEFENDANTS:
Shawntoyia N. Bernard, Esq.
Email: shawntoyia.bernard@palmbeachschools.org
Lisa Kohring
Email: lisa.kohring@palmbeachschools.org
THE SCHOOL BOARD OF PALM BEACH COUNTY, FLORIDA
JulieAnn Rico, Esq.
General Counsel

PO Box 19239
West Palm Beach, FL 33416

COUNSEL FOR PLAINTIFF:
Malik Leigh, Esq.
Email: malik@WatsonLeigh.com
Danielle R. Watson, Esq.
Email: danielle@WatsonLeigh.com
WATSON LEIGH LAW AND EDUCATION SERVICES GROUP, INC.
PO Box 221172
West Palm Beach, FL 33422